Henry BOWENS, Plaintiff,

v.

Lamar KNAZZE, Defendant.

No. 64 C 1054.

United States District Court
N. D. Illinois, E. D.
Jan. 29, 1965.

Henry Bowens, plaintiff, pro se.

Benjamin E. Novoselsky, Special Corp. Counsel, Chicago, Ill., for defendant.

WILL, District Judge.

Plaintiff brings this action under the Civil Rights Act, 42 U.S.C. § 1983, seeking the recovery of damages for an illegal search of his person.

Defendant is an officer of the Chicago Police Department. Early on the morning of August 21, 1961, plaintiff, his wife and another couple were walking in the vicinity of 39th Street and Cottage Grove Avenue in the city of Chicago. Officer Knazze, and his partner, Officer Frawley, having been informed that plaintiff's wife was carrying a concealed weapon, stopped the two couples on the street. The weapon, concealed by newspapers, was in the possession of plaintiff's wife and was surrendered to Officer Knazze. Officer Frawley approached the plaintiff who attempted to run away, but later stopped. Frawley searched the plaintiff and found no weapon. As Frawley proceeded to search the second man in the group, Officer Knazze decided to make a more thorough search of the plaintiff. This second search yielded a package of heroin which had been concealed in the fly of plaintiff's trousers.

Plaintiff was then taken into custody and charged with the unlawful posses-sion of narcotic drugs. He was subsequently indicted for this offense.

Upon trial, Bowens moved to suppress the package of heroin found in his trousers. The trial judge, after a hearing on the motion, allowed the package to be admitted in evidence. On the basis of this evidence, plaintiff was convicted of the offense charged in the indictment.

Bowens appealed the judgment of conviction to the Supreme Court of Illinois, which reversed and vacated the conviction, holding that the heroin was obtained in an illegal search and that the trial judge erred in admitting it in evidence. People v. Bowen (sic), 29 Ill.2d 349, 194 N.E.2d 316 (1963). The court determined that the initial search by Officer Frawley was reasonable and lawful. However, since the officer had determined, to his satisfaction, that Bowens was unarmed, the subsequent and more thorough search by Officer Knazze was held to be unlawful. Inasmuch as the heroin was found in the second search, its use in evidence was proscribed. In reaching this conclusion, the court made no reference to prior decisions and it appears that the question of the lawfulness of a "double search" was before the Illinois court for the first time.

The defendant has filed a motion to dismiss the instant complaint, contending that it does not state a cause of action under § 1983. Responding to this motion, plaintiff urges only that each and every time a search is determined to be unlawful, the person searched has a cause of action under the Civil Rights Act. While § 1983 is written with broad strokes, we cannot conclude that it should be so automatically and comprehensively construed. An examination of the decisions of the Supreme Court and lower federal courts leads to the conclusion that one essential requirement of an action under § 1983 is that the plaintiff show facts which indicate that the defendant, at the time he acted, knew or as a reasonable man should have known that his acts were ones which would deprive the plaintiff of his constitutional rights or might lead to that

result. The basis for this conclusion is set out below.

■■ Plaintiff points to the decision of the Supreme Court in Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) to support his contention that an illegal search is automatically actionable under § 1983. There is no doubt that the prohibitions of the Fourth Amendment are applicable to officials acting under color of state law. It is also clear that, after Monroe v. Pape, it is not necessary to allege that the defendant acted with the specific purpose and intent of depriving one of a federal civil right. However, as the Seventh Circuit has pointed out, when considering fact situations to which the Civil Rights Act applies, Monroe must be read in light of its peculiar facts. Phillips v. Nash, 311 F.2d 513, 515 (7 Cir.1962). See also, Beauregard v. Wingard, 230 F.Supp. 167, 174 (S.D.Cal.1964).

The problem of applying language in Monroe to determine the existence of a cause of action under § 1983 stems initially from the Supreme Court's statement that the statute "should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions". 365 U.S. at 187, 81 S.Ct. at 484. The early reaction to this statement appears to have been directed toward the possibility that the Court intended to indicate that § 1983 provided a federal remedy for all torts where the alleged tortfeasor acted under color of state law. See Hardwick v. Hurley, 289 F.2d 529 (7 Cir.1961).

Shortly after Hardwick, the Court of Appeals for the Ninth Circuit considered the same problem. Cohen v. Norris, 300 F.2d 24 (9 Cir.1962). Noting the discussion in Hardwick, the court stated that, in its view

"the quoted language from Monroe is not susceptible of the broad reading which held misgivings for the court in Hardwick. The court in Monroe was dealing with the necessity of alleging a specific intent to encroach upon federal rights. The allegations being dealt with were those which *must* be stated in a complaint, not those which *might* be stated in an answer. The statement in Monroe * * * suggests that there may well be defenses, such as self defense and unforseeability due to defects in a warrant, or by reason of other circumstances." 300 F.2d at 29.

Monroe v. Pape thus did no more than eliminate the requirement of pleading specific intent.

■ In order for the Civil Rights Act to apply, the acts complained of must result in a deprivation of rights secured by the Constitution. Under the general principles of tort liability, it is sufficient that a reasonable man would have foreseen this result. However, a subsequent determination that the officer's conduct resulted in a deprivation of constitutional rights does not mean that the result was foreseeable and that the officer's conduct was therefore tortious.

■ The Civil Rights Act created a new type of tort: the invasion, under color of law, of a citizen's constitutional rights. The test of tortious conduct in an ordinary tort case is, as a general rule, whether at the time of the incident the defendant was negligent, whether he failed to act as a reasonably prudent man. In such cases the judgment of negligence is based on a standard of behavior left to the determination of the community. The reasonable man is "a personification of a community ideal of reasonable behavior, determined by the jury's social judgment". Prosser, Handbook of the Law of Torts (2d Ed.), § 31.

■ In ordinary tort litigation, we allow a jury to find that a defendant committed a tort when, looking back to the event, it finds that the defendant acted unreasonably. A defendant may be found negligent on the basis of a determination that the conduct questioned in the civil suit violated a statute or ordinance (e. g., that the defendant was exceeding the speed limit). These

judgments pose no problem because they are merely the application of general standards which, by definition, the defendant should have been able to apply at the time the acts complained of occurred.

■ The tort created by the Civil Rights Act, however, is not amenable to such treatment in at least one respect. The measure of a citizen's constitutional rights is not left to the determination of the community-at-large. It is determined by the courts. If that standard has not yet been enunciated by a court in a manner which makes its applicability to the incident at hand clear, the potential defendant cannot be expected to conform his conduct to it. Unlike the requirements of a statute or the judgment of the community which can be applied retroactively, the retroactive application of the judgment of a court as to the requirements of the Constitution—based not on community standards but on legal reasoning—would place a defendant in an impossible position.

It would require law enforcement officers to respond in damages every time they miscalculated in regard to what a court of last resort would determine constituted an invasion of constitutional rights, even where, as here, a trial judge—more learned in the law than a police officer—held that no such violation occurred.

We would observe that, if plaintiff is correct and every act ultimately determined to be constitutionally improper gives rise to an action under § 1983, it would be reasonable to assume that we should hold the trial judge equally responsible as the police officer. Each has committed the identical error. Clearly, the Act does not purport to make such a judicial error actionable. It would be unreasonable to construe the Act in a manner which produces a different and more rigorous standard for the police officer.

■ The applicability of the Civil Rights Act to the facts of this case must be determined with reference to the standards of constitutional protection current at the moment the defendant acted. The decision of the Supreme Court of Illinois determined that the search conducted by Officer Knazze was an invasion of the plaintiff's constitutional rights. It does not indicate that the defendant acted tortiously and, without this element of tortious conduct, the Civil Rights Act does not apply.

■ ■ So long as the defendant's conduct stemmed from his reasonable belief as to the requirements of the law and was not unreasonable in any other way, he cannot be held responsible— under the standard of liability set forth in Monroe v. Pape—for the deprivation of plaintiff's rights. "No one has a constitutional right to be free from a law officer's honest misunderstanding of the law or facts in making an arrest". Agnew v. City of Compton, 239 F.2d 226, 231 (9 Cir.1956), cert. den. 353 U.S. 959, 77 S.Ct. 868, 1 L.Ed.2d 910 (1957).[1] Thus, the action of a police officer cannot be tortious when the officer proceeds on the basis of his reasonable, good faith understanding of the law and does not act with unreasonable violence or subject the citizen to unusual indignity. The facts alleged in the complaint demonstrate conclusively that the defendant could not reasonably have foreseen that a deprivation of constitutional rights might have resulted from his conduct. Under such circumstances, the complaint must be dismissed.

Plaintiff suggests that the incident was one of "unusual indignity" inasmuch as the defendant unzipped his trousers

1. While much of Agnew has been overruled because of its conflict with Monroe v. Pape (see Cohen v. Norris, supra, 300 F.2d at 29–30), the principle quoted above remains applicable. Its status is confirmed by numerous current cases recognizing its validity. See, e. g., Beauregard v. Wingard, supra, 230 F. Supp. at 177; Cox v. Shepherd, 199 F.Supp. 140, 143 (S.D.Cal.1961); Antelope v. George, 211 F.Supp. 657, 659 (D.Idaho 1962); and Joyce v. Ferrazzi, 323 F.2d 931, 933 (1 Cir. 1963).

to remove the package of heroin. It is clear that Officer Knazze, having determined that something was hidden in plaintiff's trousers, was entitled to remove the concealed object. That the plaintiff chose to hide the package in a particular place adds nothing to his complaint.

As noted earlier, the legality of a "double search" had never before been considered by the Supreme Court of Illinois or, to our knowledge, by any other court. We cannot say that Officer Knazze should have known that such a search would be held to be illegal. Nor do we think that a police officer who feels that his partner's search was insufficient should be required, in the immediacy of the situation, to analyze the various legal arguments which might be made where there is no case in point. We would not allow a jury to reach such a conclusion. We can properly expect police officials to follow the law as stated in statutes and developed in judicial decisions. We should not expect them to sit as judges.

The Court also notes that, subsequent to the filing of the instant complaint, plaintiff filed a second complaint, containing substantially the same allegations and, in addition, charging that Officer Frawley "conspired" with the States Attorney prosecuting the narcotics case. We understand that the Motion to Dismiss filed with respect to the first complaint is intended to apply to the subsequent complaint as well. Apparently, the plaintiff is also aware of this intention inasmuch as his answer to the motion amplifies his allegations with respect to Officer Frawley. Plaintiff indicates that his allegation is based on the fact that Officer Frawley gave testimony during the hearing on the motion to suppress. He does not claim that the officer gave perjured testimony. Rather, he states that the officer should have known that the evidence was illegally obtained. In substance, this is the same assumption upon which the complaint against Officer Knazze is based. The decision of the trial court belies the assumption that the issue was so clear. Officer Frawley's testimony cannot be the basis for a cause of action.

For the foregoing reasons, both the instant complaint and the related complaint subsequently filed will be dismissed for failure to state a cause of action under the Civil Rights Act, 42 U.S.C. § 1983. An appropriate order will be entered.