**Betty Shotley HUOTARI, Plaintiff,**

v.

**George VANDERPORT et al., Defendants.**

Civ. No. 5–72–47.

United States District Court, D. Minnesota, Fifth Division.

Aug. 14, 1974.

Newton S. Friedman, Friedman § Friedman, Duluth, Minn., for plaintiff.

William P. Dinan, City Atty., by Daniel C. Berglund, Asst. City Atty., Duluth, Minn., for defendants.

## MEMORANDUM OPINION

HEANEY, District Judge, Sitting by Designation.

Plaintiff brings this action for damages against defendant police officers, under 42 U.S.C. § 1983, for deprivation of her constitutional rights in connection with defendants' warrantless search of her dwelling for the purpose of arresting a burglary suspect. Plaintiff is of American Indian descent. Defendants claim that they are not liable in damages because: (1) plaintiff consented to the search; (2) they did not need a warrant to enter a dwelling to effect arrest upon probable cause; and (3) they acted in good faith.

Early on the morning of May 21, 1971, a break-in took place at the Ace High Tavern in the city of Duluth, Minnesota. In the police investigation which followed, an eyewitness identified a John Michaud and a Thomas Hagadorn as two of the persons engaged in the break-in, and other evidence was developed which linked the two to the incident. Michaud and Hagadorn are of American Indian descent. By May 25, according to the testimony of defendant Vanderport, the authorities had determined to arrest both suspects. Officer Vanderport further testified that he "understood" that an arrest warrant would be issued that day; in fact, no arrest warrant was issued until May 27, 1971.

Meanwhile, on the afternoon of May 26, 1971, the Duluth police department received an anonymous telephone tip to the effect that John Michaud and a "John Bartlett" were in a white 1965 Chevrolet Nova, Minnesota license number 4CZ408, and were "heading for 1104B E. 3rd St." The tip was logged in at 3:18 p.m. The address was that of the plaintiff, Mrs. Betty Huotari. Following broadcast of this message over the police radio system, along with a warning that the car might be a stolen vehicle, two officers who are not defendants here, Roberg and Waller, proceeded in one car to that address. Discovering the described auto to be parked nearby, the officers began to observe the apartment house complex which included 1104B E. 3rd St.

Almost immediately, the officers saw two men come out onto the second porch from the corner and return quickly inside. That porch contains two doors, one of which leads to plaintiff's apartment. Officer Waller recognized one of the two men as John Michaud. This testimony is corroborated by the official police radiotelephone log for that day, which shows that at 3:39 p.m., one of the two policemen radioed headquarters with the following message: "need another sqd here michaud just came out on porch & went back in * * *." Waller then went around to the back of the building while Roberg continued observing the front.

Responding to the call for assistance, defendants Price and Vanderport arrived within a matter of minutes. They talked to Roberg, who informed them that Michaud had been seen on one of the porches. Defendants proceeded to the door which they understood Michaud to have entered and went up a flight of stairs to the apartment of Mrs. Catherine Truitt, a Caucasian woman. There, they identified themselves and announced that they were searching for a man who had been seen going into her apartment. Rather than conducting a search, however, defendants proceeded to walk straight through her apartment to a back stairway, which led down a flight of stairs to a landing just outside of plaintiff's kitchen. Mrs. Truitt indicated to defendants that there was an Indian family living below her and they went down the stairs.

There is a conflict of testimony as to whether plaintiff was holding the kitchen door ajar or whether the officers proceeded to knock, and there is also a conflict as to whether plaintiff gave her consent to a search of her apartment. Four witnesses (plaintiff, plaintiff's son, and both defendants) testified that plaintiff asked if they had a warrant

and that the officers replied that they did not have one. Following this discussion, defendants searched the apartment and, within a matter of minutes, discovered John Michaud in a closet in one of the bedrooms. Michaud was the nephew of the plaintiff, but the officers did not know this prior to their arrival at plaintiff's dwelling. Michaud was placed under arrest on the burglary charge and a companion, John Barkley, who had been sitting at a table in the dining room, was arrested on a charge of drunkenness. The two were taken to the police station and booked, and an arrest warrant was issued for Michaud the next day.

■ The Fourth Amendment guarantees to all individuals the right to be free from "unreasonable" searches and seizures. This protection of individual privacy is "shaped by the warrant clause." Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706, 720 (1973) (Brennan, J., dissenting). Searches conducted without prior issuance of a warrant by a judicial officer are "per se 'unreasonable'," id., "subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L.Ed.2d 576 (1967). These exceptions are "jealously and carefully drawn." Jones v. United States, 357 U.S. 493, 499, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958). This is especially true when government authorities intrude into a person's dwelling:

> * * * The right of officers to thrust themselves into a home is * * * a grave concern, not only to the individual but to a society which chooses to dwell in reasonable security and freedom from surveillance. When the right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or Government enforcement agent.

Johnson v. United States, 333 U.S. 10, 14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948) (Jackson, J.).

## CONSENT

■■ Defendants insist that such an exception was present here in that plaintiff consented to the search of the premises. It is true that a search authorized by consent is wholly valid. See, Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); Katz v. United States, supra; United States v. Culp, 472 F.2d 459 (8th Cir.), cert. denied, 411 U.S. 970, 93 S.Ct. 2161, 36 L.Ed.2d 692 (1973). However, defendants' reliance on the defense of consent to validate the search places upon them the burden of proving that consent was, in fact, "freely and voluntarily given." Bumper v. North Carolina, 391 U.S. 543, 548, 88 S. Ct. 1788, 20 L.Ed.2d 797 (1968). See also, Schneckloth v. Bustamonte, 412 U. S. 218, 222, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); United States v. Kroll, 481 F.2d 884 (8th Cir. 1973).

■ Defendants have failed to meet that burden. Despite the testimony of both defendants that plaintiff had met them cordially at the kitchen door, both defendants testified that plaintiff had asked them if they had a warrant. This testimony is consistent with plaintiff's claim that she did not wish to admit the officers unless the law compelled her to do so, and is inconsistent with the officers' claim that she voluntarily invited them in. Moreover, it was stipulated by the parties that the attorney for plaintiff, Mr. Friedman, would testify, if called as a witness, that he had received a phone call from plaintiff's son and had heard one of the officers in the background declaring that no matter what the attorney said, they would conduct the search. This, too, is inconsistent with defendants' assertion that consent to search was "freely and voluntarily given."

## NECESSITY OF A WARRANT TO EFFECT ARREST IN A DWELLING

Since there is inadequate evidence from which to find a giving of consent, the defendants must rely on some other

exception to the warrant requirement if they are to validate the search. Defendants assert that where a police officer has probable cause both to believe that a person has committed a felony and to believe that that person is in a particular dwelling, the officer may enter to make an arrest without any warrant and without consent of the owner of the premises. The Court rejects this contention as too broadly stated.

■ The Court finds that defendants did have probable cause both to believe that Michaud had committed a felony and to believe that he was in plaintiff's apartment. The latter belief was not, of course, sufficiently supported by the anonymous telephone call. See, Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Nor would it be supported by Mrs. Truitt's statement to the effect that an Indian family lived in plaintiff's apartment. To hold that such general information relating to race gives rise to probable cause would be to permit searches of a most unreasonable and pernicious nature. However, the identification of Michaud on the porch by officer Waller was a sufficient basis for the belief that Michaud was in plaintiff's apartment, notwithstanding the momentary confusion of defendants in going to the wrong door, a mistaken action which the Court finds was taken in good faith.

■ Nevertheless, even conceding the existence of probable cause, the Court is not prepared to say that a search warrant is not necessary where the search is for a person rather than for "effects." The proposition advanced by defendants is too sweeping to comply with the Fourth Amendment's command that searches be reasonable, and it is emphatically not settled law. As Justice Stewart said in Coolidge v. New Hampshire 403 U.S. 443, 476, 91 S.Ct. 2022, 2043, 29 L.Ed.2d 564 (1971), the "fundamental question of when the police may arrest a man in his house without a warrant has been little considered in the federal courts." The Court had avoided this "grave constitutional question" in Jones v. United States, 357 U.S. 493, 499–500, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958), and avoided it once more in Coolidge.

Yet five Justices went on record in Coolidge for the proposition that special circumstances are required before dispensing with a warrant, even when police reasonably believe that a felon is within a dwelling:

> It is clear, then, that the notion that the warrantless entry of a man's house in order to arrest him on probable cause is per se legitimate is in fundamental conflict with the basic principle of Fourth Amendment law that searches and seizures inside a man's house without a warrant are per se unreasonable in the absence of some one of a number of well defined "exigent circumstances." * * *

Coolidge v. New Hampshire, supra 403 U.S. at 477–478, 91 S.Ct. at 2044. The majority went on to say of the very proposition which defendants seek to assert here:

> * * * Indeed, if Mr. Justice White is correct that it has generally been assumed that the Fourth Amendment is not violated by the warrantless entry of a man's house for purposes of arrest, it might be wise to reexamine that assumption. * * *

Id. at 481, 91 S.Ct. at 2045.

The District of Columbia Circuit has ruled several times that there is no general doctrine of warrantless search for arrest, and that special urgency must be shown, even in cases of felony arrest, before the warrant requirement will be dispensed with. In Morrison v. United States, 104 U.S.App.D.C. 352, 262 F.2d 449 (1958), the Court held that in the absence of a special showing of urgency, a warrantless entry and arrest of defendant in his home two hours after commission of a crime was not constitutionally permissible. Judge Prettyman's

opinion stressed the anomaly of providing an exception for arrest:

> The officers entered to make a search. It was, to be sure, a search for a person rather than the usual search for an article of property. * * * The Government urges that this latter fact requires that we apply the rules of law pertaining to arrest rather than the rules governing search. But the search was a factual prerequisite to an arrest * * * [and] the officers did in fact search the house. * * *

*Id.* at 452.

In Dorman v. United States, 140 U.S. App.D.C. 313, 435 F.2d 385 (1970), the same Circuit, now sitting en banc, adopted unanimously the rule which had been laid down in *Morrison:*

> We now come to the general question whether the general requirement of a warrant as a condition for entry into a house is subject to an exception where the entry is for the purpose of making an arrest of a suspected felon. As we shall later point out, the requirement of a warrant may be excused where circumstances do not tolerate delay. * * * But the basic principle, the constitutional safeguard that, with room for exceptions, assures citizens the privacy and security of their homes unless a judicial officer determines that it must be overridden, is applicable not only in case of entry to search for property, but also in case of entry in order to arrest a suspect. * * *

Dorman v. United States, *supra* at 390. The Court then listed a series of special factors which might help to show "exigent circumstances," including the fact that a grave or violent offense was involved, that the suspect is reasonably believed to be armed, a likelihood that the suspect will escape, and the impracticality of being able to obtain a warrant due to the time of night.

The Eighth Circuit has not adopted defendants' proposed rule that probable cause to arrest gives carte blanche to enter a dwelling to effect the arrest. Indeed, it recently left the door open for possible future adoption of the rule expressed in *Dorman. See,* United States v. Bazinet, 462 F.2d 982 (8th Cir.), cert. denied, 409 U.S. 1010 93 S.Ct. 453, 34 L.Ed.2d 303 (1972). *Compare,* United States v. Blake, 484 F.2d 50 (8th Cir. 1973), where the Court declared that federal agents had a right to enter an apartment to effect arrest under an arrest warrant and, once inside, had probable cause to search for narcotics which might easily be destroyed. Here, there was no warrant of any kind.

■ This Court holds that in instances of arrest within a dwelling, the Fourth Amendment requires that the police—at least where they have no arrest warrant—obtain a search warrant unless "exigent circumstances" are shown to exist. As with any exemption from the warrant requirement, the burden of demonstrating the need for the exception is on those seeking to dispense with the safeguard. *See,* Vale v. Louisiana, *supra.*

Returning to the facts of this case, the Court finds that the defendants have not shown that such exigent circumstances existed in connection with the search of plaintiff's apartment. Officers Roberg and Waller were not in "hot pursuit" of Michaud. When they radioed for assistance, it would have been a simple matter to request a search warrant. There is nothing in the record to suggest that Michaud was expected to leave momentarily or that the officers would have any difficulty in apprehending him if he did. Nor is there any evidence indicating that they believed that Michaud might be armed. Thus, Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), a case where a dangerous, armed suspect was still in the process of fleeing from the scene of the crime, is not applicable. Indeed, Justice Stewart sees *Warden's* "hot pursuit" doctrine as the exception which proves the rule of *Dorman. See,* Coolidge v. New Hampshire, *supra* at

480–481, 91 S.Ct. 2022. Moreover, there was no fear that Michaud would destroy any instrumentalities or fruits of the crime, a fact which distinguishes this case from a host of cases cited by defendants. *See, e. g.,* Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Mapp, 476 F.2d 67 (2nd Cir. 1973); United States v. Wylie, 149 U.S.App.D.C. 283, 462 F.2d 1178 (1972); United States v. Davis, 461 F.2d 1026 (3rd Cir. 1972).

All the events took place between 3:30 and 4:00 in the afternoon on a week day. The testimony of defendants Price and Vanderport to the effect that they would not have been able to find a judge at that time of day to sign a warrant is self-serving, particularly as it is clear that they made no effort to obtain a warrant. Moreover, even if true,

> * * * [t]he vital protections of the Fourth Amendment cannot be hinged upon the convenience of the police, prosecutors, and judges. * * * McDonald v. United States, 335 U.S. 451, 455–456, 69 S.Ct. 191, 193, 98 L.Ed. 153 (1948) * * *
>
> * * * * * *
>
> If the processes of our government are such that police officers are unable to secure search warrants outside of ordinary business hours, then the cure for that problem is not to sacrifice the Fourth Amendment rights of our citizens, but to streamline the warrant procuring procedure.

United States v. Bozada, 473 F.2d 389, 394–395 (8th Cir.) (En banc) (Lay and Heaney, JJ., dissenting), cert. denied, 411 U.S. 969, 93 S.Ct. 2161, 36 L.Ed.2d 691 (1973). Since no exigent circumstances are shown, the Court holds that the failure of defendants to secure a search warrant before searching plaintiff's home resulted in a violation of plaintiff's constitutional right to be secure in her home against unreasonable search and seizure by governmental authorities.

## DEFENSE OF GOOD FAITH

■ There remains, however, the defense of good faith which is available to police officers in suits for damages under § 1983. *See,* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); Mattis, M.D. v. Schnarr, etc. et al., 502 F.2d 588 (8th Cir. 1974). As the Supreme Court declared in Pierson v. Ray, *supra,*

> * * * [A] police officer is not charged with predicting the future course of constitutional law. * * * [I]f the jury found that the officers reasonably believed in good faith that the arrest was constitutional, then a verdict for the officers would follow even though the arrest was in fact unconstitutional. * * *

*Id.* 386 U.S. at 557, 87 S.Ct. at 1219.

■ The Court finds that defendant officers have made an adequate showing of good faith to preclude plaintiff's claim for damages. Obviously, reliance on the erroneous belief that an arrest warrant had been issued and was at headquarters is not good faith. However, officer Price testified, in effect, that he relied on the provisions of Minn.Stat.Ann. § 629.34.[1]

---

1. Minn.Stat.Ann. § 629.34 reads:
   A peace officer may, without warrant, arrest a person:
   (1) For a public offense committed or attempted in his presence;
   (2) When the person arrested has committed a felony, although not in his presence;
   (3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; or

   (4) Upon a charge made upon reasonable cause of the commission of a felony by the person arrested.
   To make such arrest the officer may break open an outer or inner door or window of a dwelling house if, after notice of his office and purpose, he shall be refused admittance.
   Officer Wutz testified that there were no departmental procedures or rules as to when a search warrant ought be obtained to enter a home to effect an arrest. His testimony

Given the difficult question of constitutional law involved and the fact that the statute had not been challenged in adjudication and found unconstitutional, that reliance was reasonable. Pierson v. Ray, *supra*, is directly in point:

\* \* \* A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does. Although the matter is not entirely free from doubt, the same considerations would seem to require excusing him from liability for acting under a statute that he reasonably believed to be valid but that was later held unconstitutional, on its face or as applied.

386 U.S. at 555, 87 S.Ct. at 1218.

Moreover, the constitutional issue of whether or not a warrant is necessary to enter a dwelling to effect arrest has been an open one, dividing the Supreme Court, and an issue not yet ruled on by the Eighth Circuit. In such circumstances, "either view as to its ultimate resolution might be entertained reasonably and in good faith." Williams v. Gould, 486 F.2d 547, 548–549 (9th Cir. 1973).

Had the officers exceeded the scope of a search necessary to effect arrest, their claim of good faith might well be negated just as "a search which is reasonable at its inception may violate the Fourth Amendment by virtue of its intolerable intensity and scope." Terry v. Ohio, 392 U.S. 1, 17–18, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). *Cf.,* Cupp v. Murphy, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). The evidence as to scope, although conflicting, is not sufficient to sustain a finding that defendants did anything other than look for the person who was ultimately seized.

## CONCLUSION

A judgment order will accordingly be entered for defendants. The foregoing constitutes the findings of fact and conclusions of law of the Court, pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

---

was essentially that "it depends upon the particular officer." Notwithstanding the statute, it is difficult to understand the failure of the City to provide detailed guidelines in this important area. Such guidelines, in addition to protecting the citizenry from unreasonable intrusions such as that suffered by Mrs. Huotari, would also assist the police officer in making some of the difficult daily decisions demanded of him by his occupation.