[No. 47229-7. En Banc. July 23, 1981.]

LINDA C. HOCKER, *Petitioner*, v. JAMES P. WOODY, ET AL, *Respondents*.

*M. C. Cole* of *Puget Sound Legal Assistance Foundation,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Kathleen Mix, Assistant,* for respondents.

UTTER, J.—Linda Hocker brought a civil rights action based on 42 U.S.C. § 1983 to recover damages from James Woody, a parole officer, for his alleged forcible intrusion into her private home. Finding that Woody's actions did not violate the constitution, both the trial court and Court of Appeals entered a judgment for him. We believe there was a constitutional violation but affirm those judgments, for Woody acted in good faith.

In her complaint, Hocker alleges that Woody demanded entrance into her home on seven occasions to search for Dennis Swindler, a parolee whose parole had been suspended for failure to remain in a halfway house. During those intrusions, Woody did not have a search warrant but did have a personally executed administrative order, called a "warrant" and dated October 14, 1977, directing the apprehension of Swindler.

Woody was responding to information, supplied by one of Hocker's neighbors, that Swindler was often in Hocker's home. Swindler had previously lived with Hocker and was the father of one of her children. Pursuant to that information, Woody made several attempts to locate Swindler in the Hocker home, and on a number of occasions was

admitted voluntarily. On others, he was refused entry. During one of the latter, Woody allegedly threatened Hocker, stating he would break down the door if she offered resistance.

On January 10, 1978, Woody received a call from a neighbor, indicating that Swindler was again at Hocker's home. Woody proceeded to the residence with two other officers, observed Swindler's car in front of the house, went to the front door, and asked Hocker if he could come in. She replied he would have to break in, whereupon he then broke a corner of the screen door and entered the house but did not find Swindler.

The trial court found that only the January search was forcibly made and that there was probable cause to believe Swindler was then present in the home. The Court of Appeals affirmed, believing that the probable cause legitimated the search.

■ The finding of probable cause, unfortunately, does not resolve the issues presented. 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Under this provision officers are liable for unlawful searches and seizures. *Monroe v. Pape,* 365 U.S. 167, 5 L. Ed. 2d 492, 81 S. Ct. 473 (1961); *Pierson v. Ray,* 386 U.S. 547, 18 L. Ed. 2d 288, 87 S. Ct. 1213 (1967). They have, however, a qualified immunity so that they may exercise their discretion without undue timidity. *Scheuer v. Rhodes,* 416 U.S. 232, 40 L. Ed. 2d 90, 94 S. Ct. 1683 (1974); *Wood v. Strickland,* 420 U.S. 308, 321, 43 L. Ed. 2d 214, 95 S. Ct. 992 (1975); *Imbler v. Pachtman,* 424 U.S. 409, 47 L. Ed. 2d 128, 96 S. Ct. 984 (1976).

> There is immunity unless the official knew or reasonably should have known that the action he [or she] took within his [or her] sphere of official responsibility would violate the constitutional rights of the [person] affected, or if he [or she] took the action with the malicious intention to cause a deprivation of constitutional rights or other injury . . .

*Wood,* at 322. *Accord, Bivens v. Six Unknown Named Agents,* 456 F.2d 1339, 1348 (2d Cir. 1972). The official must have believed his or her conduct was constitutional and such belief must have been reasonable. *Wood,* at 321; *Bivens,* at 1348. A purely subjective standard has been rejected, for it would encourage ignorance of the law. *Glasson v. Louisville,* 518 F.2d 899, 910 (6th Cir.), *cert. denied,* 423 U.S. 930, 46 L. Ed. 2d 258, 96 S. Ct. 280 (1975). Under the test, conduct is per se unreasonable if contrary to "clearly established constitutional rights." *Wood,* at 322. *Procunier v. Navarette,* 434 U.S. 555, 55 L. Ed. 2d 24, 98 S. Ct. 855 (1978); *Huotari v. Vanderport,* 380 F. Supp. 645 (D. Minn. 1974). Thus, to prevail in a section 1983 action, the plaintiff must show, according to established law, a prima facie violation of a constitutional right and the absence of any reasonable, subjective good faith intent.

Under the law as it now exists, there is no question but that Woody's conduct violated Hocker's constitutional rights. An arrest warrant for a suspect only suffices to allow entry into the suspect's own residence, not the residence of a third person. *Steagald v. United States,* __ U.S. __, 68 L. Ed. 2d 38, 101 S. Ct. 1642 (1981). *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980). Absent consent or exigent circumstances, which may include hot pursuit, entry into the home of a third party to conduct a search or make an arrest is unreasonable unless done pursuant to a warrant. *Steagald, supra; Payton, supra.*

Here, the administrative arrest warrant was signed by the officer conducting the entry and search. That fact directly concerned the court in *Steagald,* at page 46, where

it noted:

> The purpose of a warrant is to allow a neutral judicial officer to assess whether the police have probable cause to make an arrest or conduct a search. As we have often explained, the placement of this checkpoint between the Government and the citizen implicitly acknowledges that an "officer engaged in the often competitive enterprise of ferreting out crime," . . . may lack sufficient objectivity to weigh correctly the strength of the evidence supporting the contemplated action against the individual's interests in protecting his own liberty and the privacy of his home.

Although there is a body of law holding parolees have diminished Fourth Amendment rights, these cases are limited to searches of the "parolee, his home, and his effects." *State v. Simms,* 10 Wn. App. 75, 81, 516 P.2d 1088 (1973), *review denied,* 83 Wn.2d 1007 (1974). *Accord, State v. Coahran,* 27 Wn. App. 664, 620 P.2d 116 (1980).

While Hocker's constitutional rights were violated, courts have uniformly refused to award damages when the constitutional right allegedly violated was not clearly established at the time of the conduct. *See, e.g., Laverne v. Corning,* 522 F.2d 1144 (2d Cir. 1975); *Williams v. Gould,* 486 F.2d 547 (9th Cir. 1973); *Huotari, supra; Bowens v. Knazze,* 237 F. Supp. 826 (N.D. Ill. 1965). Under such circumstances, a defendant is said to have acted reasonably, absent a showing of malicious intent. *Id.* To conclude otherwise, the courts have reasoned, "would place a defendant in an impossible position." *Bowens,* at 829. As stated in *Bowens,* at page 829:

> It would require law enforcement officers to respond in damages every time they miscalculated in regard to what a court of last resort would determine constituted an invasion of constitutional rights, even where, as here, a trial judge—more learned in the law than a police officer—held that no such violation occurred.

The Court of Appeals correctly noted that at the time of Woody's conduct there was a distinct division of authority as to whether a search warrant or exigent circumstances

was required. *See generally United States v. Hammond,* 585 F.2d 26, 28 n.1 (2d Cir. 1978); 2 W. LaFave, *Search and Seizure* 376–86 (1978). This court had not addressed the issue and only one opinion in the Court of Appeals had commented on it. *State v. Werth,* 18 Wn. App. 530, 571 P.2d 941 (1977), *review denied,* 90 Wn.2d 1010 (1978). And that discussion, being unnecessary to the result in that case, was not legally binding. The petitioner's constitutional rights were therefore not clearly established at the time of the conduct and she could recover only if Woody's actions showed a malicious intent.

An examination of the record indicates no such malicious intent was present. On the contrary, it is uncontroverted that Woody sought the advice of a deputy attorney general prior to his actions and was assured a warrant was not necessary. In *Laverne, supra,* a mayor, deputy mayor, building inspector and other village officials were sued under 42 U.S.C. § 1983 for a warrantless entry. Although the entry was found to be unconstitutional, the court refused damages, finding that the law at the time of the entry was inconsistent and that the village attorney had advised that entry could take place. *Laverne,* at 1150. To that court these factors indicated both the reasonableness of the entry and the officials' good faith belief in its lawfulness.

In extreme cases, courts have held that reliance on advice of counsel is not an absolute bar to section 1983 liability. *See, e.g., Crowe v. Lucas,* 595 F.2d 985 (5th Cir. 1979); *Johnson v. San Jacinto Jr. College,* 498 F. Supp. 555 (S.D. Tex. 1980). Where a defendant knew or should have known of the constitutional right, ignorance or disregard of settled, indisputable law will not be a defense. Reliance on advice of counsel, rather than being an absolute defense, is only a factor to be considered on the issue of good faith. *Johnson v. San Jacinto Jr. College, supra; Crowe v. Lucas, supra.*

In this case, there was no clear disregard of established law and therefore we conclude as a matter of law that Woody acted reasonably, not maliciously, and in good faith.

The judgment of the Court of Appeals is affirmed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, DOLLIVER, HICKS, WILLIAMS, DORE, and DIMMICK, JJ., concur.