[No. 27215-2-I.   Division One.   April 20, 1992.]

CAROL GURNO, *Appellant*, v. THE TOWN OF LACONNER,
ET AL, *Respondents*.

*Donald J. Bisagna,* for appellant.

*Richard B. Johnson; Steven L. Thorsrud* and *Keating, Bucklin & McCormack, P.S.,* for respondents.

BAKER, J. — Carol Gurno appeals from a judgment on a directed verdict in favor of respondent police officers and municipality, alleging the trial court erred in finding that she did not present substantial evidence of: (1) lack of probable cause for her arrest; (2) negligent training of respondent police officers; and (3) emotional distress. We affirm in part, reverse in part, and remand.

## FACTS

On a Friday night in 1988, Carol and John Gurno met friends for drinks at the Lighthouse Inn in the town of LaConner. At some point in the evening they went out to the parking lot to discuss going home. After returning to the Inn, they were approached by three LaConner police officers who questioned them separately concerning a bartender's report that Mr. Gurno had been hitting Ms. Gurno in the parking lot. Both denied that any hitting had occurred. The officers asked the Gurnos to leave the Inn (the Gurnos testified that the officers asked them to leave the town), and a friend agreed to drive them home.

The Gurnos and their friend walked to the Gurnos' van, whereupon Ms. Gurno began to walk to city hall to talk to the chief of police. Mr. Gurno yelled at her to return to the van, and discouraged her attempt to contact the chief.

Unbeknownst to the Gurnos, one of the officers who had questioned them at the Lighthouse Inn observed their interaction at the van. He radioed for assistance from two other officers and arrested the Gurnos for violation of the Domestic Violence Prevention Act (DVPA), RCW 26.50, and for disorderly conduct. He later cited them for resisting arrest as well.

Police reports on the incident contain the following pertinent information. When questioned at the Inn, both of the Gurnos smelled of intoxicating beverage. Ms. Gurno was crying and appeared fearful and hesitant. Officer Heerspink came out to the scene at the van after hearing loud profanity while he was in the nearby police station. He observed Mr. Gurno grab Ms. Gurno by the arm and tell her she was going with him. Officer Heerspink then arrested the Gurnos for domestic violence, telling Ms. Gurno that she was under arrest for provoking the assault and that Mr. Gurno was under arrest for having uncontrollable anger and being physical with his wife. Mr. Gurno resisted the application of handcuffs and later tried to break the officer's grip on his arm.

Carol Gurno alleges that rough treatment by the officers aggravated her preexisting injuries from an automobile accident and an industrial accident. She testified that one of the officers conducted a search on her body that included unnecessary touching of her breasts and pelvic area. She also testified that she was forced to urinate in the patrol car when the officers would not let her go to the bathroom.

The Gurnos were in custody from Friday night until the following Monday to await a court appearance. RCW 10.31-.100(2). No charges were filed against them.

Ms. Gurno sued the individual officers, their marital communities, the Town of LaConner, and the LaConner Police Department for false arrest, false imprisonment, and deprivation of liberty without due process.[1] She claimed that the institutional defendants had been negligent in training the officers who arrested her.

---

[1] At the time of trial, the police department was no longer a party.

The trial court denied defendants' motion for summary judgment and the case proceeded to a jury trial. The Gurnos testified that no assault had taken place in the Lighthouse Inn parking lot, and that Ms. Gurno's loudness at the van was due to the fact that Mr. Gurno has a 40 percent hearing loss. They denied consuming more than one or two drinks each. Ms. Gurno testified that Mr. Gurno did not grab her arm, but merely held it and turned her around so he could read her lips.

Ms. Gurno's only other trial witnesses were the arresting officer, who did not give any significant testimony concerning the events in question or his training, and Police Chief Yonally. Chief Yonally testified that the arresting officer was a reserve officer who patrolled as a line officer on the night in question. He stated that reserve officers patrolled approximately twice a month because the department had a shortage of full-time line officers. This officer had been given 80 hours of field training but had not attended the police academy, which includes 440 hours of instruction. Chief Yonally testified that the purpose of academy training was to give recruits the basic skills necessary to serve as police officers.

At the close of plaintiff's case, the court granted defendants' motion for a directed verdict. Ms. Gurno appeals from a judgment entered on that verdict.

### DIRECTED VERDICT FOR RESPONDENT POLICE OFFICERS

The trial court directed a verdict in favor of respondent police officers on all claims. It found that probable cause for appellant's arrest had been demonstrated, even when the evidence was looked at in a light most favorable to appellant. Having found there was probable cause for the arrest, the court concluded that appellant had not been deprived of her constitutional rights.

■ We review the trial court's ruling under the following standard:

> A motion for a directed verdict may be granted only if it can be said, as a matter of law, that no evidence or reasonable

inferences existed to sustain a verdict for the party opposing the motion. The evidence must be considered in the light most favorable to the nonmoving party.

*Bender v. Seattle*, 99 Wn.2d 582, 587, 664 P.2d 492 (1983).

### False Arrest/False Imprisonment

In an action for false arrest, "[t]he rule is that unless the evidence conclusively and without contradiction establishes the lawfulness of the arrest, it is a question of fact for the jury to determine whether an arresting officer acted with probable cause." *Daniel v. State*, 36 Wn. App. 59, 62, 671 P.2d 802 (1983). Probable cause for a warrantless arrest exists where the facts and circumstances within the arresting officer's knowledge, and of which he or she has reasonably trustworthy information, are sufficient to permit a person of reasonable caution to believe that an offense has been or is being committed. *State v. Gluck*, 83 Wn.2d 424, 426-27, 518 P.2d 703 (1974); *Seattle v. Cadigan*, 55 Wn. App. 30, 36, 776 P.2d 727, *review denied*, 113 Wn.2d 1025 (1989). The absence of probable cause to believe a person committed one crime for which he or she was arrested does not invalidate the arrest if police had sufficient information at the time of the arrest to support the arrest on a different charge. *Cadigan.* In appellant's case, if probable cause existed for her arrest on any one of the three offenses for which she was cited, then the arrest was lawful.

Appellant was cited, first, for assault under the DVPA. "Domestic violence" is defined in the DVPA to include assault committed by one spouse against another. RCW 10.99.020(2)(a)-(d). The DVPA provides that police shall exercise arrest powers with reference to certain criteria set forth in RCW 10.31.100.[2] RCW 10.99.030(3)(a).

---

[2]RCW 10.31.100(2)(b) provides that an officer shall arrest a person without a warrant when the officer has probable cause to believe:

"The person is eighteen years or older and within the preceding four hours has assaulted that person's spouse, . . . and the officer believes: (i) A felonious assault has occurred; (ii) an assault has occurred which has resulted in bodily injury to the victim, whether the injury is observable by the responding officer or

Appellant was also cited for violation of LaConner town ordinances prohibiting disorderly conduct and resisting arrest.[3]

Testimony by appellant and her husband concerning the events in question, together with police reports introduced into evidence, constituted substantial evidence that the officers lacked probable cause to arrest her for any of the three offenses. The police reports contain the following pertinent information: (1) a bartender at the Lighthouse Inn reported that a man was hitting a woman in the Inn's parking lot; (2) when police arrived at the establishment and spoke to appellant, she seemed fearful and hesitant; (3) police later heard loud profanity coming from another parking lot in town (the reports do not state whether appellant, her husband, or both were responsible for the noise); (4) as appellant walked away from their van, her husband yelled

---

not; or (iii) that any physical action has occurred which was intended to cause another person reasonably to fear imminent serious bodily injury or death. Bodily injury means physical pain, illness, or an impairment of physical condition. When the officer has probable cause to believe that spouses . . . have assaulted each other, the officer is not required to arrest both persons. The officer shall arrest the person whom the officer believes to be the primary physical aggressor. In making this determination, the officer shall make every reasonable effort to consider: (i) The intent to protect victims of domestic violence under RCW 10.99.010; (ii) the comparative extent of injuries inflicted or serious threats creating fear of physical injury; and (iii) the history of domestic violence between the persons involved."

[3]Neither of these LaConner ordinances is part of the record on appeal. However, the parties agree that the ordinances provide, in pertinent part:

9.3(a) A person is guilty of disorderly conduct if he (1) uses abusive language and thereby intentionally creates a risk of assault; or . . . (4) intentionally conducts himself in a noisy, riotous or tumultuous manner by the use of profane, vulgar, abusive, or indecent language, knowing that such conduct is likely to cause reasonable affront or alarm or will unreasonably disturb the peace and quiet of the Town; or (5) shall be found fighting in the Town of LaConner.

(b) Disorderly conduct is a crime.

Brief of Appellant, at 17; Brief of Respondent Town of LaConner, at 13.

8.3(a) A person is guilty of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from lawfully arresting him.

(b) Resisting arrest is a crime.

Brief of Appellant, at 18; Brief of Respondent Town of LaConner, at 13.

for her to come back, grabbed her arm and told her she was going with him; (5) appellant was "fighting physically and arguing" with her husband (the reports do not state what actions were taken by appellant as opposed to her husband); and (6) the arresting officer told appellant that she was being arrested under the DVPA for "provoking the assault", and told her husband that he was being arrested due to his "uncontrollable anger and being physical with his wife."

Viewing the evidence in a light most favorable to the nonmoving party, appellant was at most the victim of a domestic assault. There is nothing in the police reports to indicate that she assaulted anyone. Although the officers stated in deposition that they arrested appellant for fourth degree assault, and the parties repeat this assertion in their briefs, the citation lists the offense as violation of former RCW 9A.36.030 — third degree assault. The only portion of this third degree assault statute, since repealed, that appellant could conceivably have violated concerns an assault committed with intent to resist arrest:

> (1) Every person who, under circumstances not amounting to assault in either the first or second degree, shall be guilty of assault in the third degree when he:
> (a) *With intent to prevent or resist the execution of any lawful process or mandate of any court officer or the lawful apprehension or detention of himself or another person shall assault another*[.]

(Italics ours.) Former RCW 9A.36.030. Since violation of the DVPA requires a crime committed by one family member against another, the only way to interpret the citation is that appellant was accused of assaulting her *husband* with the intent to prevent her own arrest or his. The facts reflected in the police reports do not support such a citation. Rather, the police reports indicate that appellant provoked an assault by her husband and later resisted her own arrest.

While "provoking" an assault is not a violation of the DVPA, *see* RCW 10.99.020(2), it does constitute disorderly conduct under LaConner Town Ordinance 9.3(a)(1) if done intentionally by the use of abusive language. However, the

police reports do not provide enough information about appellant's conduct to be able to say, "conclusively and without contradiction", that police had probable cause to arrest her for disorderly conduct, especially in light of her testimony denying such conduct. *Daniel v. State*, 36 Wn. App. at 62.

As for resisting arrest, nothing in the police reports refers to any action of this nature by appellant. The reports state that her husband resisted the application of handcuffs by turning his head and pushing his body back into the arresting officer, and that he later tried to break the officer's grip on his arm.

Had the trial court permitted the jury to hear the defense case, respondent officers might have testified concerning the specifics of appellant's conduct that justified her arrest, at least for disorderly conduct or resisting arrest. The jury would then have been free to find, under proper instructions, that the officers had probable cause to arrest her. However, a directed verdict at the close of appellant's case was improper.

## Section 1983

■ Lack of probable cause for an arrest gives rise to an action for damages under 42 U.S.C. § 1983. *McKenzie v. Lamb*, 738 F.2d 1005, 1007 (9th Cir. 1984). Since the trial court's directed verdict for respondent officers on false arrest and false imprisonment was in error, we find that the court also erred in directing a verdict on appellant's § 1983 claim.

## Qualified Immunity

Respondent officers cite various doctrines of qualified immunity for police officers who act in good faith, arguing that appellant failed to introduce evidence of their lack of good faith in arresting her. *Hocker v. Woody*, 95 Wn.2d 822, 825, 631 P.2d 372 (1981) (§ 1983); *Guffey v. State*, 103 Wn.2d 144, 152, 690 P.2d 1163 (1984) (Washington common law); RCW 10.99.070 (DVPA). The officers apparently suggest qualified immunity as an alternative ground on which

to affirm the directed verdict in their favor. We examine each of the immunity doctrines in turn.

■ Qualified immunity under § 1983 is granted to police officers performing discretionary functions insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 73 L. Ed. 2d 396, 102 S. Ct. 2727, 2738 (1982). Good faith in a § 1983 action is an affirmative defense that a *police officer* must prove once the plaintiff has established that the rights claimed to be violated were clearly established at the time of the conduct at issue. *Maraziti v. First Interstate Bank,* 953 F.2d 520 (9th Cir. 1992); *Benigni v. Hemet,* 879 F.2d 473, 479-80 (9th Cir. 1988). The right to be arrested only upon probable cause is clearly established; the officers therefore had the burden of proving the reasonableness of their conduct.[4] The evidence heard prior to the dismissal did not satisfy the officers' burden of proof; therefore, we cannot affirm the directed verdict on appellant's § 1983 claim on the alternative ground of qualified immunity. *See Kennedy v. Los Angeles Police Dep't,* 901 F.2d 702, 706 (9th Cir. 1989) (it is improper to direct a verdict on immunity unless there is only one reasonable conclusion a jury could reach).

■ ■ Turning to the common law doctrine of qualified immunity, the doctrine applies where an officer "(1) carries out a statutory duty, (2) according to procedures dictated to him by statute and superiors, and (3) *acts reasonably.*" (Italics ours.) *Guffey,* 103 Wn.2d at 152. The italicized portion of the standard would only be amenable to determination by directed verdict if the reasonableness of the officers' conduct was clear as a matter of law. Here it was not. (See pages 225-26.) Furthermore, the Supreme Court appears to have

---

[4]We acknowledge that the Washington Supreme Court in *Hocker,* 95 Wn.2d at 825, stated in dicta that the plaintiff in a § 1983 action has the burden of proving the absence of good faith. However, the allocation of the burden of proof was not at issue in *Hocker,* and federal case law clearly places that burden on the officer. *See Maraziti; Benigni.*

held that the *Guffey* doctrine is inapplicable to domestic violence situations, which are governed instead by the DVPA qualified immunity statute, RCW 10.99.070. *See Roy v. Everett*, 118 Wn.2d 352, 359, 823 P.2d 1084 (1992).

■ The DVPA qualified immunity statute was interpreted in *Roy* as granting immunity only for conduct occurring in the course of an arrest or other on-the-scene action. *Roy*, 118 Wn.2d at 357-58; RCW 10.99.070.[5] The arrest in the present case falls squarely within the coverage of the statute as interpreted in *Roy*. However, as discussed above, the existence of good faith may not be resolved by way of a directed verdict unless the reasonableness of the officer's conduct is clear as a matter of law.

Respondent officers assert that their conduct was immunized as "any other action or omission in good faith under this chapter". RCW 10.99.070. However, the factual question whether probable cause existed for appellant's arrest cannot be avoided by holding, as a matter of law, that the arrest was immunized as "any other action or omission in good faith" rather than as "an arrest based on probable cause". RCW 10.99.070.

In conclusion, we find that: (1) the trial court erred in directing a verdict in favor of respondent officers on the ground that probable cause existed for her arrest as a matter of law; and (2) the directed verdict cannot be affirmed on the alternative ground that the officers were protected by qualified immunity.

### DIRECTED VERDICT FOR RESPONDENT
### TOWN OF LACONNER

■ Appellant's theory of liability against the Town of LaConner was that it negligently trained respondent police officers. To establish a prima facie case of negligence, appellant was required to show a duty, breach, proximate causa-

---

[5]RCW 10.99.070 provides:

"A peace officer shall not be held liable in any civil action for an arrest based on probable cause, enforcement in good faith of a court order, or any other action or omission in good faith under this chapter arising from an alleged incident of domestic violence brought by any party to the incident."

tion and resulting injury. *Hoffer v. State*, 110 Wn.2d 415, 421, 755 P.2d 781 (1988), *aff'd on rehearing*, 113 Wn.2d 148, 776 P.2d 963 (1989). Appellant failed to present any evidence as to the standard of care for training police officers, a breach of that standard, or that such a breach proximately caused her alleged false arrest. Her only witness concerning training procedures was Chief Yonally, who provided none of the required evidence. The trial court therefore correctly directed a verdict for respondent Town of LaConner on appellant's false arrest and false imprisonment claims.

Appellant likewise failed to establish a prima facie case against the Town under § 1983. As her counsel conceded in oral argument, appellant produced no evidence to prove that the alleged deficiency in training actually caused police officers to arrest her unlawfully. *See Canton v. Harris*, 489 U.S. 378, 391, 103 L. Ed. 2d 412, 109 S. Ct. 1197 (1989).

█ Appellant produced no evidence to prove a municipal policy or custom that inflicted her injury. Respondeat superior or vicarious liability will not attach under § 1983. It is only when the execution of the municipality's policy or custom inflicts the injury that it may be held liable under § 1983. *Canton*, 489 U.S. at 385. In a case based on failure to train, such liability must be premised on a "failure to train [that] amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton*, 489 U.S. at 388.

Chief Yonally provided none of the required evidence. The trial court therefore correctly directed a verdict for the Town on appellant's § 1983 claim.

## EMOTIONAL DISTRESS DAMAGES

█ Appellant next assigns error to the trial court's ruling that she did not present substantial evidence of emotional distress. The court apparently believed that damages for emotional distress were precluded absent evidence of objective symptoms of distress, which appellant did not present. While this would be true if appellant's claim were

for negligent infliction of emotional distress, her claim was based instead on an intentional tort — false imprisonment. Emotional distress damages are recoverable for an intentional tort even in the absence of objective symptoms. *Nord v. Shoreline Sav. Ass'n*, 116 Wn.2d 477, 485, 805 P.2d 800 (1991); *see Hunsley v. Giard*, 87 Wn.2d 424, 436, 553 P.2d 1096 (1976).

Since appellant made no separate claim for outrage or negligent infliction of emotional distress, it was unnecessary for the court to address the issue of emotional distress damages once it directed a verdict on all of the claims that could have given rise to such damages.

The directed verdict in favor of respondent Town of LaConner is affirmed. The directed verdict in favor of respondent police officers is reversed and the matter is remanded for a new trial.

GROSSE, C.J., and AGID, J., concur.

Review denied at 119 Wn.2d 1019 (1992).