[No. 59056-7. En Banc. March 11, 1993.]

DOUGLAS G. HOFLIN, *Respondent,* v. THE CITY OF OCEAN SHORES, *Petitioner.*

114

*Law, Lyman & Kamerrer, P.S.,* and *Guy Bogdanovich,* for petitioner.

*John L. Farra,* for respondent.

SMITH, J. — The City of Ocean Shores petitioned for review of a decision by the Court of Appeals, Division Two, which reinstated Respondent Douglas G. Hoflin's wrongful termination action by reversing the trial court which granted summary judgment to Ocean Shores. We granted review on May 5, 1992. We reverse the Court of Appeals and affirm the trial court.

STATEMENT OF FACTS

Conviction in Federal Court[1]

Respondent Douglas G. Hoflin (Respondent) was Director of Public Works for the City of Ocean Shores (City) from 1975

---

[1] Adapted substantially from the opinion affirming Respondent Hoflin's federal convictions. *United States v. Hoflin,* 880 F.2d 1033 (9th Cir. 1989).

to 1980, when he left for personal reasons. He returned as acting director in 1982 and again became Director in 1983. His responsibilities as Director included supervising the maintenance of roads and operation of a sewage facility. In 1983, he directed his subordinates to bury 14 55-gallon drums of road surface paint at the sewage treatment plant over objections of the plant director, Fred Carey. As the drums were being buried, at least one burst open and several were crushed. In 1984, three truckloads of kitchen sludge from the City's golf course restaurant were delivered to the sewage treatment facility for burial. Mr. Carey refused to accept delivery, but Respondent Hoflin ordered him to do so. The sludge was then dumped into a depression in the ground and covered with dirt. In 1985, Mr. Carey reported these incidents to state officials, who, in turn, notified the Federal Environmental Protection Agency. By this time, some of the paint buried in 1983 had leaked into the soil.

A federal grand jury indicted Respondent Hoflin for the felony of disposing of a hazardous waste (the paint) without obtaining a permit;[2] the felony of conspiracy to dispose of hazardous waste without obtaining a permit;[3] and the misdemeanor of disposing of the kitchen sludge.[4] A jury in the United States District Court for the Western District of Washington acquitted Respondent of the conspiracy charge, but found him guilty of the other two counts in January 1986.[5] The court suspended imposition of sentence and placed Respondent Hoflin on probation for 2 years. The convictions were affirmed by the United States Court of Appeals for the Ninth Circuit in 1989.[6]

---

[2]18 U.S.C. § 2; 42 U.S.C. § 6928(d)(2)(A).

[3]18 U.S.C. §§ 371, 372.

[4]18 U.S.C. § 2; 33 U.S.C. § 1319(c)(1).

[5]*United States v. Hoflin*, No. CR85 82T (W.D. Wash. 1986).

[6]*United States v. Hoflin*, 880 F.2d 1033 (9th Cir. 1989).

## Action by City of Ocean Shores

Following Respondent Hoflin's convictions in the federal court, City Manager Robert Orlander requested that City Attorney Michael Valdez research the impact of the felony conviction on Respondent's employment with the City.[7] The City Attorney, in turn, contacted Robert Hauth, general counsel for Municipal Research and Services Center of Washington.[8] In a letter dated March 18, 1986, Mr. Hauth advised Mr. Valdez that he interpreted RCW 9.92.120[9] to mean that "a conviction followed by judgment and sentence automatically terminates a public office whether elected or appointed . . .."[10] Mr. Valdez agreed with Mr. Hauth's interpretation of RCW 9.92.120 and on March 24, 1986, sent the city manager a memorandum explaining his views.[11]

Prior to Respondent Hoflin's sentencing in the federal court, City Manager Orlander met with him and gave him a copy of City Attorney Valdez' memorandum. Mr. Orlander told Respondent to let him know "if he or his attorney could see a way around applying RCW 9.92.120."[12] Neither Respondent nor his attorney made any responsive suggestions or requested a hearing. Respondent Hoflin was then dismissed from employment with the City on March 30, 1986.

On May 6, 1986, City Manager Orlander by letter informed the Department of Employment Security that the City did not oppose paying unemployment benefits to Respondent Hoflin.

---

[7]Clerk's Papers, at 69.

[8]Clerk's Papers, at 74.

[9]RCW 9.92.120:
"**Conviction of public officer forfeits trust.** The conviction of a public officer of any felony or malfeasance in office shall entail, in addition to such other penalty as may be imposed, the forfeiture of his office, and shall disqualify him from ever afterward holding any public office in this state."

[10]Clerk's Papers, at 74.

[11]Clerk's Papers, at 69-73.

[12]Clerk's Papers, at 67-68.

He explained that although Respondent's employment had been terminated, "[t]he City's position has been that Mr. Hoflin made an innocent mistake and should never have been prosecuted in the first place for his offense. The City did not desire or wish to terminate Mr. Hoflin, but his position was forfeit under the provisions of the state law."[13]

## Proceedings in Superior Court

On August 26, 1987, Respondent Hoflin filed this action in the Grays Harbor County Superior Court against the City, claiming illegal discharge, breach of contract, and the tort of outrage.[14] He claimed that RCW 9.92.120 did not apply to him because he was not an elected public officer.[15] He also claimed that he had been afforded no hearing in violation of his due process rights. Both parties moved for summary judgment, agreeing to exclude the issue of damages from their motions.[16] Respondent Hoflin asked the trial court to rule that the forfeiture statute, RCW 9.92.120, was the sole reason for his dismissal and that the statute did not apply to him. In a letter ruling dated May 24, 1988, the trial court, the Honorable Michael G. Spencer, stated:

> Both parties have moved for summary judgment on stipulated facts. . . .
> . . . [T]he City terminated his employment based on their belief of the applicability of RCW 9.92.120.
> . . . .
> A number of different issues have been raised by the plaintiff. Of critical importance to the court, however, is a determination of whether or not the legislature intended the application of this statute to a federal felony, for which the underlying

---

[13]Clerk's Papers, at 7.

[14]Clerk's Papers, at 1-3.

[15]This issue was not formally decided by the trial court because it found "just cause" for the dismissal under the City's Municipal Code. It was mentioned, but not formally appealed, to the Court of Appeals. That court did not address it because it ruled that the entire forfeiture statute did not apply. The issue was not mentioned nor argued before this court.

[16]Verbatim Report of Proceedings, at 2, 4, 24.

conduct would be punished as a gross misdemeanor under the laws of the State of Washington.

I have reviewed the indictments which served as the basis for Mr. Hoflin's federal convictions. Similar conduct under the laws of the State of Washington, i.e., the disposal of hazardous waste, would be punished as a gross misdemeanor. (See RCW 70.105.050.) The only felonious conduct described by Washington statute requires the disposal of hazardous substances or toxins with knowledge that it places others in imminent danger of death or serious bodily injury. (See RCW 9A.36.110.) Clearly, elementally this conduct is distinguished and exceeds that described in Mr. Hoflin's indictment.

The court finds the termination of Mr. Hoflin under RCW 9.92.120 and the facts surrounding this case improper. . . .

. . . .

. . . Mr. Hoflin was convicted of a felony under federal statute which would be punished as a gross misdemeanor under the laws of this state. Because our state legislature proscribes the scope and degree of punishment for criminal acts, they obviously did not contemplate or intend the forfeiture of office for one convicted and punished under our state statutory scheme. Nor could they contemplate, or intend for that matter, that one punished for similar conduct under federal law be removed from office.

Lastly, even if this were a contemplated and intended legislative result, such a scheme is violative of the Fourteenth Amendment to the United States Constitution guaranteeing all persons within this jurisdiction the equal protection of the law.

The plaintiff's motion for summary judgment is granted.[17]

The trial court did not address Respondent's other claim that the forfeiture statute was the sole reason for his dismissal.

On June 9, 1988, the City moved for reconsideration, claiming that RCW 9.92.120 provides two alternative grounds for

---

[17]Clerk's Papers, at 12-14.

RCW 70.105.050: "**Disposal at other than approved site prohibited — Disposal of radioactive wastes.** (1) No person shall dispose of designated extremely hazardous wastes at any disposal site in the state other than the disposal site established and approved for such purpose under provisions of this chapter . . .."

RCW 70.105.090: "**Violations — Gross misdemeanor.** In addition to the [civil] penalties imposed pursuant to RCW 70.105.080, any person who violates any provisions of this chapter, or of the rules implementing this chapter . . . shall be guilty of a gross misdemeanor . . .."

forfeiture of public office by a public officer. The City stated in its motion that it did not object to the trial court's conclusion that no felony was committed under Washington law, but claimed that RCW 9.92.120 still applied because Respondent had committed malfeasance in office and had therefore forfeited his office. The City also claimed that it had previously reserved the right to add new defenses to liability as the need arose. It argued that it was immune from liability because Respondent was employed "at will" and also because it had relied on the forfeiture statute in "good faith".[18]

On June 24, 1988, Respondent Hoflin filed a cross motion for summary judgment on the issue of malfeasance in office. He claimed that the only reason originally given him by the City for dismissing him from employment was his felony conviction, and that now the City was attempting to justify his dismissal by claiming additional reasons. He also asserted that the City did not hold a hearing to determine whether he had committed malfeasance in office.[19]

In a letter dated July 15, 1988, the trial court stated that "[s]ummary judgment is inappropriate if genuine issues of material fact are in dispute. The issue of whether or not malfeasance in office occurred as a result of the plaintiff's conviction is a matter which must be resolved at trial."[20]

On September 26, 1988, the trial court by order denied the City's motion for reconsideration and its motion for summary judgment. The order did not mention Respondent Hoflin's cross motion for summary judgment.[21] Trial was set for June 20, 1989.[22]

On April 25, 1989, Respondent Hoflin filed a motion for reconsideration of his cross motion for summary judgment.

---

[18]Clerk's Papers, at 16-20.

[19]Clerk's Papers, at 21-24.

[20]Clerk's Papers, at 25.

[21]Clerk's Papers, at 27.

[22]Clerk's Papers, at 28.

He claimed, based on his own and City Manager Orlander's depositions, that there was no material issue of fact. He argued that at the time of his dismissal, the parties believed that the only reason for his forfeiture of office was the violation of federal law.[23] This claim was an extension of his previous claim that the City was attempting to justify the dismissal by expanding its original reasons for dismissing him. On May 4, 1989, the City filed a motion and brief in opposition, addressing the breach of contract issue by claiming that Respondent Hoflin was employed "at will", that he therefore was not entitled to any civil service protection and, as a consequence, did not deserve a hearing prior to his dismissal. The City also claimed that the conduct which resulted in the federal convictions also constituted malfeasance in office.[24] On May 8, 1989, the trial court denied Respondent Hoflin's motion for reconsideration.[25]

On May 19, 1989, the City moved for summary judgment on the issue of liability. It claimed that because no employment contract existed between it and Respondent Hoflin, he therefore was employed "at will". Thus, the City argued, there was no breach of contract for dismissing him, there was no requirement that he receive advance notice of dismissal or the reasons for dismissal, and therefore the City had no liability.[26] On August 17, 1989, Respondent Hoflin opposed the City's motion. He submitted portions of the City's Administrative Code in an attempt to establish the existence of an implied contract and procedures required before dismissal, including notice and hearing.[27] On August 31, 1989, the City responded by claiming that Respondent Hoflin was afforded notice and a hearing prior to his dismis-

---

[23]Clerk's Papers, at 28-30.

[24]Clerk's Papers, at 31-34.

[25]Clerk's Papers, at 35-36.

[26]Clerk's Papers, at 37-42.

[27]Clerk's Papers, at 43-66.

sal. The City claimed that the meeting between City Manager Orlander and Respondent Hoflin, prior to his conviction, when Mr. Orlander gave him a copy of City Attorney Valdez' memorandum and asked him to suggest another solution, constituted notice and an opportunity to respond.[28]

In a letter dated November 2, 1989, the trial court granted summary judgment in favor of the City on Respondent's claims for outrage and breach of contract. However, the trial court made a distinction between "malfeasance" and "misfeasance" and ordered a jury trial on the issue of malfeasance in office.[29]

On November 22, 1989, the trial court asked the parties to submit memoranda on whether RCW 9.92.120 allowed or required "summary removal of an officer or require[d] a charge, hearing, and finding"; and, if a finding was required, whether the hiring authority or a jury should make the determination of malfeasance in office. The court also directed the parties' attention to RCW 29.82.010.[30] Nevertheless the court apparently was satisfied that the hiring authority could decide whether malfeasance in office occurred and could summarily remove the officer. On December 21, 1989, it granted summary judgment on all claims in favor of the City.[31] The court

---

[28]Clerk's Papers, at 67-75.

[29]Clerk's Papers, at 76-77.

[30]Clerk's Papers, at 78-79. While it provides definitions of "misfeasance" and "malfeasance", RCW 29.82.010 actually relates to recall procedures for elected public officers of the State and is of questionable applicability in this case except that the definitions are reasonably generic.
    **Initiating recall proceedings — Statement — Contents — Verification — Definitions. . . .**
    For the purposes of this chapter:
    (1) "Misfeasance" or "malfeasance" in office means any wrongful conduct that affects, interrupts, or interferes with the performance of official duty;
    (a) Additionally, "misfeasance" in office means the performance of a duty in an improper manner; and
    (b) Additionally, "malfeasance" in office means the commission of an unlawful act;
RCW 29.82.010.

[31]Clerk's Papers, at 80-81.

observed that the focus of the parties on the forfeiture statute had been misplaced and that the employment relationship between the parties was more important. It did not address the malfeasance portion of the statute. The court concluded that Respondent Hoflin was employed "at will", or in the alternative, that "just cause" existed for his termination under the City's Municipal Code because of the felony convictions in the federal court. The court also noted that

> [T]he termination process, under the stipulated facts of the case, was not inadequate. Although a full termination hearing did not take place, neither state nor federal law requires such. As a matter of law, even under Mr. Hoflin's recitation of the facts, the hearing which took place between he [sic] and Orlander sufficiently complied with law.[32]

## Proceedings in the Court of Appeals

On appeal, Respondent Hoflin argued that the trial court had granted summary judgment in his favor earlier in the case and had simply failed to bring the proceedings to an end.[33] He also argued that the City had a duty to notify him of the true reason for dismissing him at the time of his dismissal, and that its failure to do so denied him the opportunity to prepare a defense. He argued that the City had notified him of one reason for dismissing him (the forfeiture statute), but later asserted different reasons at trial. This, he claimed, denied him due process under *Loudermill*[34] and *Danielson*.[35] He argued that the City could not claim additional reasons for dismissing him and that at trial the City could rely only upon the forfeiture statute as the sole reason for his dismissal. He argued that the City did not appeal the conclusions of the trial court that the forfeiture statute was the sole and actual reason for his dismissal and that he had

---

[32]Judge Spencer's letter ruling (Dec. 21, 1989); Clerk's Papers, at 80-81.

[33]Brief of Appellant (Respondent in this court), at 34, 37-38.

[34]*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985).

[35]*Danielson v. Seattle*, 108 Wn.2d 788, 742 P.2d 717 (1987).

not committed a felony applicable to the forfeiture statute. Therefore, he argued, the original summary judgment in his favor constituted a complete disposition of the only issues properly before the court.[36]

The City answered Respondent Hoflin's claims by stating that the trial court's summary judgment on "at will" employment and "just cause" for dismissal was properly based on the undisputed facts. It argued that Respondent was afforded a pretermination "hearing" required by *Loudermill*, and also that the malfeasance portion of the forfeiture statute was applicable to him. The City also disputed Respondent's claim that the trial court had originally granted summary judgment in his favor on the issue of liability because the trial court had realized that Respondent had not yet proved his other theories of liability (such as breach of contract) and because the court had orally modified its ruling to restrict it to the felony portion of the forfeiture statute.[37]

On November 21, 1991, the Court of Appeals, Division Two, issued its opinion reversing the trial court.[38] The court treated as the law of the case the conclusion of the trial court that RCW 9.92.120 did not effect an automatic forfeiture of Respondent's position, citing *Vigil v. Spokane Cy.*[39] According to the Court of Appeals, the City did not appeal the trial court's ruling and was precluded from relying on statutory forfeiture as grounds for termination. The court then rejected the City's claim that Respondent was employed "at will", stating that state law and the Ocean Shores city ordinance were "sufficient to raise in Hoflin an expectation that he would be termi-

---

[36] Brief of Appellant (Respondent in this court), at 34, 37-38.

[37] Brief of Respondent (Petitioner in this court) at 49-50; Verbatim Report of Proceedings, at 2-3, 13-15, 20A-25.

[38] *Hoflin v. Ocean Shores*, 63 Wn. App. 422, 819 P.2d 403 (1991).

[39] 42 Wn. App. 796, 799, 714 P.2d 692 (1986) (citing *Garcia v. Brulotte*, 94 Wn.2d 794, 797, 620 P.2d 99 (1980) and *Horwath v. Washington Water Power Co.*, 68 Wn.2d 835, 845, 416 P.2d 92, 420 P.2d 216 (1966) for the proposition that rulings to which the parties do not object become the law of the case).

nated only for 'just cause'. Hoflin, therefore, had a protected property interest in his job, and was entitled to *Loudermill* due process."[40]

The Court of Appeals also rejected the City's claim that "even though the cause specified in its [termination] notice to Hoflin may have been invalid, it in fact had just cause for Hoflin's termination; Hoflin had been convicted of a crime and his conviction had been affirmed."[41] The court distinguished *Haag v. Revell*,[42] a private employment case relied upon by the City, stating that:

> Ocean Shores's reliance on *Haag* is misplaced; the issue before us is not whether there existed a valid, albeit unspecified, cause that might have supported termination of private employment to which due process did not apply. Rather, we are concerned with whether Hoflin was accorded the due process required in the termination of a public employee.[43]

The court further stated that adequate notice is a fundamental requirement of due process and that "notice specifying cause for termination does not comport with due process if, in favor of a different cause when a court later finds the specified cause invalid, the employer abandons the specified cause."[44]

The court concluded that the City had failed to meet the requirements of *Loudermill* by not holding a pretermination hearing on the actual cause for the dismissal. It further stated that if the convictions were the cause for dismissal, City Manager Orlander had discretion under the City's ordinance "to terminate or not" and a pretermination hearing would have provided Respondent Hoflin an opportunity to

---

[40](Citations omitted.) *Hoflin v. Ocean Shores, supra* at 425.

[41]*Hoflin v. Ocean Shores, supra* at 426.

[42]28 Wn.2d 883, 184 P.2d 442 (1947). In a footnote, the court also distinguished *Baldwin v. Sisters of Providence*, 112 Wn.2d 127, 769 P.2d 298 (1989) as a private employment case.

[43]*Hoflin v. Ocean Shores, supra* at 426.

[44]*Hoflin,* at 426.

persuade Mr. Orlander to exercise discretion in his favor. But, observed the court, mandatory application of RCW 9.92-.120 "allowed the manager no discretion. [Respondent] Hoflin could hope for nothing unless he could convince the manager that the city attorney was wrong, not a realistic prospect." The court then concluded that "[a] public employee terminated for cause is entitled to *meaningful* due process, an essential of which is pretermination notice of the *real* cause for termination. Hoflin did not have it."[45]

The Court of Appeals did not separately address Respondent's tort claim. The City now seeks review by this court under RAP 13.4(b)(1),[46] claiming that the decision of the Court of Appeals conflicts with *Baldwin v. Sisters of Providence*,[47] *Danielson v. Seattle*,[48] and *Hocker v. Woody*.[49]

QUESTIONS PRESENTED

The questions presented by this case are (1) whether Respondent Douglas G. Hoflin's federal felony and misdemeanor convictions constitute "just cause" to terminate his employment with Petitioner City of Ocean Shores; (2) whether the City violated Respondent's due process rights in terminating his employment; and (3) whether the City is liable for initially relying on the forfeiture statute later ruled by the trial court to be inapplicable to Respondent.[50]

---

[45]*Hoflin*, at 426, 427.

[46] "DISCRETIONARY REVIEW OF DECISION
"TERMINATING REVIEW

". . . .

"(b) **Considerations Governing Acceptance of Review.** A petition for review will be accepted by the Supreme Court only:
"(1) If the decision of the Court of Appeals is in conflict with a decision of the Supreme Court; . . .".

[47]112 Wn.2d 127, 769 P.2d 298 (1989).

[48]108 Wn.2d 788, 742 P.2d 717 (1987).

[49]95 Wn.2d 822, 631 P.2d 372 (1981).

[50]The City has not formally appealed the determination by the Court of Appeals that the City is precluded from relying on the forfeiture statute.

## DISCUSSION
### Just Cause/Breach of Contract

The City first addresses its liability for breach of contract. It claims that the Court of Appeals did not properly decide the "just cause" issue under *Baldwin v. Sisters of Providence.*[51] In its opinion, the court stated that *Baldwin* "does not support Ocean Shores's argument that just cause is any cause that the employer in good faith believes is just. *Baldwin* involved a private employment contract in which just cause was not specifically defined. The Supreme Court, therefore, was required to formulate a definition."[52]

While the Court of Appeals correctly observed that *Baldwin* was a private employment case, it was not correct in observing that a definition of just cause did not exist in the policy manual in that case.[53] This court in *Baldwin* observed that "just cause"

> [I]s a fair and honest cause or reason, regulated by good faith on the part of the party exercising the power. We further hold a discharge for "just cause" is one which is not for any arbitrary, capricious, or illegal reason and which is based on facts (1) supported by substantial evidence and (2) reasonably believed by the employer to be true.[54]

The City cites *Gaglidari v. Denny's Restaurants, Inc.,*[55] to support its claim that the *Baldwin* standard is not a definition of "just cause", but rather a method for determining it. The City claims the court used the standard to determine if "at the time plaintiff was·dismissed defendant reasonably, in good faith, and based on substantial evidence believed plain-

---

[51]112 Wn.2d 127, 769 P.2d 298 (1989).

[52]*Hoflin v. Ocean Shores, supra* at 425 n.3.

[53]"Under the terms of the employee manual, St. Peter may discharge its employees for 'just cause', which is defined as 'any gross violation of conduct . . .' ". *Baldwin v. Sisters of Providence, supra* at 129.

[54]*Baldwin,* at 139.

[55]117 Wn.2d 426, 815 P.2d 1362 (1991).

tiff had" engaged in a fight.[56] Thus, the City claims, this court did not inquire whether "fighting" was "just cause" for dismissal, but rather whether the employer legitimately relied on that cause.

The Court of Appeals construed the City's argument to mean that any cause the employer relied on in good faith would be "just cause". The City actually argued that under its municipal code all appointed employees are subject to discipline, including dismissal for cause, which includes conviction of a crime.[57] Here Respondent was convicted of a crime. The City claims that at the time he was dismissed from employment, based on substantial evidence, it reasonably and in good faith believed he had been convicted. Therefore, the City asserts, it had "just cause" to dismiss Respondent under its own ordinance and under the *Baldwin* standard.

The Court of Appeals also stated that *Baldwin* did not apply here because it was a private employment case. The City has not provided any authority applying the *Baldwin* method of determining "just cause" to dismissal in a public employment case. Even if the *Baldwin* standard is not applicable to this case, as concluded by the Court of Appeals, the City may rely on its own ordinance for determination of "just cause".

### Due Process

The Court of Appeals concluded that because Respondent Hoflin was a public employee, he is entitled to constitutional protection in addition to any contractual protection (such as "just cause"), citing *Loudermill* and *Danielson*.

---

[56]*Gaglidari*, at 438.

[57]Clerk's Papers, at 56. Sections 2.24.200 and .210(A) of the Ocean Shores City Code provide in relevant part:

"2.24.200 Discipline. [A]ll employees shall be subject to disciplinary action including . . . dismissal for any one or more of the causes or grounds for discipline set forth in these rules.

"2.24.210 Causes for Discipline. All appointed employees may be subjected to disciplinary action for cause, including but not limited to:

"A. Conviction of a crime; . . .."

■ ■ In *Danielson*, this court stated that a "due process claim to a pretermination hearing depends upon . . . having a property right in continued [public] employment".[58] The court stated that "[w]hile public employment alone does not create constitutionally protected property interests, protected property interests can arise from express or implied contracts for continued employment, . . .."[59] The court then addressed Mr. Danielson's constitutional due process by citing *Loudermill*,[60] stating that:

> The "root" requirement of the due process clause is that a deprivation of property be preceded by notice and an opportunity for hearing appropriate to the nature of the case. "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." A court must balance the competing interests at stake in determining the form of the pretermination hearing necessary for due process purposes.
>
> In public employment cases the competing considerations are: (1) the employee's interests in retaining employment; (2) the government's interest in expeditious removal of unsatisfactory employees; and (3) the risk of erroneous termination. In public employee cases, the pretermination hearing need not definitively resolve the propriety of the discharge, but should serve as an initial check against mistaken decisions — to determine whether there are reasonable grounds to believe the charges against the employee are true and support the proposed action. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."
>
> . . . [I]nformal conferences can satisfy the *Loudermill* requirements.[61]

The Court of Appeals in this case concluded that the City's argument that the meeting between Respondent and the city manager constituted notice and a hearing did not satisfy the

---

[58]*Danielson v. Seattle*, 108 Wn.2d 788, 795, 742 P.2d 717 (1987).

[59](Citations omitted.) *Danielson*, at 796.

[60]*Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487 (1985).

[61](Citations omitted.) *Danielson*, at 797-98 (quoting *Loudermill*, at 542, 546).

*Loudermill/Danielson* due process rule. The court noted that the City notified Respondent Hoflin that he was terminated, but that the reason given at that time was not the same reason argued at trial. The court then concluded that there was thus no meaningful due process. Observing that one of the most important purposes of the *Loudermill* requirements is to guard against termination based on mistake, the court concluded that the City committed a mistake in dismissing Respondent because the forfeiture statute could not correctly be used as the basis for his termination. Although the Court of Appeals recognized that informal hearings may satisfy *Loudermill*, it concluded that the mistaken belief of the parties that the forfeiture statute mandated the City's course of action nullified Respondent's opportunity to respond to the charges, with the result that the "hearing" the City claims took place was not a hearing at all.

The City claims that *Loudermill* was satisfied. It argues that the notice it provided Respondent Hoflin was the real cause for dismissal at the time and that the "real" cause mentioned in the Court of Appeals decision was only one of several possible alternative reasons it provided at trial in response to questions from the trial court. It also argues that at the meeting between Respondent and the city manager, Respondent was told that his felony convictions were the factual basis for application of the forfeiture statute, that he was given two legal opinions which supported its belief that dismissal was mandatory, and that he was invited to respond. The City concludes that this is precisely what due process under *Loudermill/Danielson* mandates.[62]

The City is correct in asserting that it satisfied the *Loudermill/Danielson* requirements. *Danielson* and *Loudermill* both require notice to the employee of factual allegations and an opportunity to respond to the employer's evidence.[63] Neither case requires that the employer also correctly identify the statute or ordinance it relies upon to justify dismissal.

---

[62]Petition for Review, at 14-15.

[63]*Loudermill*, at 535, 543-44 & nn.8, 9; *Danielson*, at 791, 798.

The Court of Appeals made no distinction between notice of the factual basis and notice of the legal basis for termination, but observed only that it was unrealistic to expect that Respondent could prove to the city manager at the termination meeting that the city attorney was wrong in determining that the forfeiture statute applied.[64] However, under *Loudermill/Danielson*, a pretermination hearing is not meant to resolve all of the issues, but merely to give the employee an opportunity to respond to the facts upon which a charge is based, since a posttermination hearing would still be available to address more subtle or complex issues. Here Respondent could have requested a posttermination hearing. His attorney could then have disputed applicability of the forfeiture statute instead of waiting a year and a half until the trial.

Although the conclusion of the Court of Appeals that a correct legal and factual basis is required for a notice of dismissal goes beyond the requirement of *Loudermill/Danielson*, it perhaps might provide further protections for the rights of public employees. But, at the same time, it would also hinder the government's interest in removing unsatisfactory employees. This requires a balancing of competing interests in determining due process and fundamental fairness.

## Good Faith/Immunity

The City makes a third claim of "good faith". It has maintained throughout the proceedings that it is immune from liability because of its "good faith" reliance on the forfeiture statute and a reasonable belief that it applied. The City made the argument more forcefully after the trial court suggested that the forfeiture statute might be unconstitutional. However, it did not sharply define the issue until its motion for reconsideration in the Court of Appeals. This issue is precluded under RAP 2.5(a)[65] as one raised for the

---

[64]*Hoflin v. Ocean Shores, supra* at 426.

[65]**"Errors Raised for the First Time on Review.** The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the

first time on appeal since the City has not established its entitlement to an exception under the rule.[66]

The City claims that under *Hocker v. Woody*[67] it is immune from liability for the unintentional violation of a constitutional right. It cites *Hocker* for the principle of immunity for a public officer who violates the constitutional rights of others, unless the officer acts with malicious intent, where the particular right violated was not clearly established at the time of the officer's actions.[68] There has been no showing in this case of malicious intent on the part of the City or any of its officers. Indeed, to the contrary, the letter from the city manager to the Employment Security Department stating that the City did not want to dismiss Respondent is some indication of "good faith".

The City argues that the constitutional right it may have violated was not clearly established because there is a split of authority on the question whether a foreign felony conviction is sufficient to precipitate application of a state forfeiture statute.[69] The City is partially correct in making this assertion. There are few cases on this issue; most are old, all concern elected officers, and only one holds that a federal felony conviction which would only constitute a misdemeanor under state law may result in forfeiture of office.[70] Those cases generally agree that where a conviction invokes

---

appellate court: (1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, and (3) manifest error affecting a constitutional right. A party or the court may raise at any time the question of appellate court jurisdiction." RAP 2.5(a).

[66]Brief of Respondent, at 30-31.

[67]95 Wn.2d 822, 631 P.2d 372 (1981).

[68]*Hocker*, at 825, 826-27.

[69]Citing 21 A.L.R.2d 732. The correct citation is 20 A.L.R.2d 732.

[70]In *Davis v. Impelliteri*, 197 Misc. 162, 94 N.Y.S.2d 159 (1950), the court stated that the federal felony conviction would have been only a misdemeanor conviction under New York law, but a misdemeanor was sufficient for application of the state forfeiture statute.

the forfeiture statute, the duties and powers of the officer, at the very least, are suspended pending outcome of an appeal.[71] In most cases the office was forfeited.[72] However, there is disagreement as to which convictions will invoke the forfeiture statute. Some state courts applying their forfeiture statute require that the felony conviction in another state or in federal court have the same sentence or that the crime have the same elements sufficient under their own laws for application of their own forfeiture statutes.[73] Other state courts only require a felony conviction in another state or federal court regardless whether the acts committed would constitute a felony in their states.[74]

The City is correct in stating that there is a split of authority on requirements for invoking forfeiture statutes. However, the constitutionality of the forfeiture statutes was

---

[71]*State ex rel. Olson v. Langer,* 65 N.D. 68, 256 N.W. 377 (1934) (where the powers and duties of the Governor of North Dakota passed to the lieutenant governor during the Governor's disability of having been convicted of a felony in the United States District Court for the District of North Dakota).

[72]*Paey v. Rodrigue,* 119 N.H. 186, 400 A.2d 51 (1979); *State ex rel. Salisbury v. Vogel,* 65 N.D. 137, 256 N.W. 404 (1934); *Briggs v. Board of Comm'rs,* 202 Okla. 684, 217 P.2d 827 (1950); *Davis v. Impelliteri,* 197 Misc. 162, 94 N.Y.S.2d 159 (1950); *State v. Redman,* 183 Ind. 332, 109 N.E. 184 (1915). In each of these cases the elected state public officer forfeited public office upon conviction in federal court.

[73]In *Paey v. Rodrigue,* 119 N.H. 186, 400 A.2d 51 (1979), the court stated that the federal sentence received by the public officer was a qualifying sentence for application of the state forfeiture statute, which required that the potential sentence be a minimum of 1 year in prison, even though his actual sentence had been suspended. In *Briggs v. Board of Comm'rs,* 202 Okla. 684, 217 P.2d 827 (1950) and *Davis v. Impelliteri,* 197 Misc. 162, 94 N.Y.S.2d 159 (1950), the courts pointed out that the conduct of the public officer constituted a crime in their particular state and their state forfeiture statute therefore applied.

[74]In *State ex rel. Olson v. Langer,* 65 N.D. 68, 256 N.W. 377 (1934), *State ex rel. Salisbury v. Vogel,* 65 N.D. 137, 256 N.W. 404 (1934), and *State v. Redman,* 183 Ind. 332, 109 N.E. 184 (1915), the courts did not specifically address whether the conduct of the public officers constituted a state crime requiring application of the forfeiture statute, thus leaving the impression that any felony conviction, regardless whether it met the definition of a state felony, was sufficient to apply the state forfeiture statute.

not questioned in any of the cases reviewed. Those cases favor the position of the City because none have ruled the forfeiture statutes unconstitutional.

### Statutory Malfeasance

The City states that it has not abandoned the issue of statutory malfeasance as concluded by the Court of Appeals. Yet it has not formally appealed that issue to this court.[75] The City, contrary to the position of Respondent and the Court of Appeals, has always disputed the conclusion that the malfeasance portion of the forfeiture statute is not applicable in this case. The Court of Appeals stated that the City had not appealed the trial court's ruling that the statute did not apply to Respondent. However, it is apparent from the record that the trial court granted summary judgment in favor of Respondent only on the issue of the inapplicability of the felony portion of the forfeiture statute.[76] Judge Spencer's letter rulings show that after he made his initial ruling on the forfeiture statute, he considered the City's motion for summary judgment on the malfeasance portion of that same statute. He stated:

> The defendant has moved for summary judgment alleging "malfeasance" in office, requiring automatic forfeiture under RCW 9.92.120. . . .
>
> . . . .
> Summary judgment is inappropriate if genuine issues of material fact are in dispute. The issue of whether or not malfeasance in office occurred as a result of the plaintiff's conviction is a matter which must be resolved at trial. The defendant's motion for summary judgment is hereby denied.[77]

The trial court ruled that the malfeasance issue should be decided by a jury, and did not foreclose the issue, as Respondent and the Court of Appeals conclude. The City made this

---

[75]Petition for Review, at 16.

[76]Judge Spencer's letter ruling (May 24, 1988) (partially quoted at pages 117-18); Clerk's Papers, at 12-14.

[77]Judge Spencer's letter ruling (July 15, 1988); Clerk's Papers, at 25.

argument in its response brief[78] to the Court of Appeals, but the court simply dismissed the issue by application of the "law of the case" rule. Petitioner City has not formally raised the issue before this court.

■ ■ The trial court was in error in its decision on the issue. The forfeiture statute mandates forfeiture of public office if the public officer is convicted of "any felony or malfeasance in office".[79] Malfeasance generally refers to the commission of an unlawful act by a public official.[80] Respondent committed an unlawful act and was found guilty in federal court.[81] That same conduct constituted a gross misdemeanor under state law and would have subjected him to liability in Washington if the State had chosen to prosecute.[82]

CONCLUSION

■ Although the trial court granted summary judgment to Petitioner City of Ocean Shores on all claims, its decision was not based upon the proper reasons. We nevertheless affirm the trial court because it reached the right result, but for the wrong reason.[83] The trial court was correct in its determination that due process was satisfied because the City properly informed Respondent of the factual basis for his dismissal under *Loudermill/Danielson* and because there is no further requirement that the City also inform Respondent of the precise legal basis for his dismissal. Additionally, the City relied upon the forfeiture statute in "good faith" under *Hocker*.

---

[78]Brief of Respondent, at 36-47.

[79]RCW 9.92.120.

[80]"Malfeasance" is defined as "wrongdoing or misconduct ... by a public official; commission of an act that is positively unlawful; distinguished from misfeasance, nonfeasance." *Webster's New World Dictionary* 857 (College ed. 1986).

[81]*United States v. Hoflin*, 880 F.2d 1033 (9th Cir. 1989).

[82]RCW 70.105.050; RCW 70.105.090.

[83]*See Tropiano v. Tacoma*, 105 Wn.2d 873, 876, 718 P.2d 801 (1986).

Respondent Douglas G. Hoflin was convicted of a felony in the federal court. As a public official of the City of Ocean Shores, he was subject to RCW 9.92.120 which mandated forfeiture of his office. The City of Ocean Shores thus acted properly in dismissing him from his position as Director of Public Works.

We reverse the Court of Appeals and affirm the trial court's determination that "just cause" existed for dismissal of Respondent Douglas G. Hoflin by the City of Ocean Shores under *Baldwin*. Although the action would have been justified under the Ocean Shores City Code, the City disclaimed reliance upon that code.[84] The undisputed fact is that Respondent was convicted of a crime — a felony in the federal court.

UTTER, DURHAM, GUY, and JOHNSON, JJ., concur.
ANDERSEN, C.J., concurs in the result.

---

[84]Verbatim Report of Proceedings, at 86.