# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Parentage of: | NO. 73207-2-I |
| T.W.J. and I.B.J. | |
| Minor Children, | |
| ANDREA ANTHONY, | |
| Respondent, | |
| and | DIVISION ONE |
| AWAN JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | FILED: January 25, 2016 |

LAU, J. — Awan Johnson appeals the trial court's order granting Andrea
Anthony's motion for a domestic violence protection order. He contends evidence that
he made a threat to kill Anthony alone is insufficient to support the trial court's
conclusion that he represents a credible threat to Anthony's safety. We disagree.
Because the record supports the trial court's conclusion that Johnson's threat inflicted a
reasonable fear of physical harm, the trial court did not abuse its discretion when it
granted Anthony's motion for an order of protection. We affirm.

FACTS

Awan Johnson and Andrea Anthony dated for approximately four years. They have two children, T.J. and I.J., who at the time of the proceedings below were ages 3 and 2. G.R., age 12, is Johnson's daughter from a previous relationship. Johnson "was emotionally and verbally abusive" throughout his relationship with Anthony. Clerk's Papers (CP) at 45. Anthony left the relationship "when the abuse started to become physical." CP at 45. In July 2014, Anthony and Johnson agreed to a parenting plan, which was entered in October 2014.

On November 15, 2014, Anthony received a text message from Johnson that I.J. was experiencing breathing problems and he called for an ambulance. Anthony went over to Johnson's residence and discovered both I.J. and T.J. "had no pants on." CP at 486. Anthony also learned that G.R. had been there earlier that day. While the paramedics examined I.J., Johnson insisted that Anthony leave and called the police. When the police arrived, they instructed Anthony to take I.J. and T.J. to the lobby of Johnson's building. Anthony left with I.J. and T.J.

After this incident, Anthony noticed a decline in T.J.'s behavior. T.J. became "angry and defiant." CP at 487. Daycare workers informed Anthony that T.J. exhibited increased behavior problems at school, including spitting on teachers, and handling his own feces. Some of T.J.'s behavioral problems were sexual in nature. For example, on one occasion he asked his younger sister I.J. to touch his genitals. Eventually, T.J. told Anthony that G.R. had sexually molested him. Child therapist Suzanne McCallum later determined that T.J. likely suffers from posttraumatic stress disorder and "[h]is

-2-

engagement in the reported sexualized play attempts suggest sexual abuse and/or exposure to inappropriate, very specific sexual material." CP at 633.

On December 12, 2014, Anthony filed a petition to modify the parenting plan, a motion for an ex parte restraining order preventing Johnson from allowing G.R. to contact T.J. and I.J. and other motions for temporary relief. The court entered an ex parte restraining order and an order to show cause, limiting Johnson's visitation to supervised visits.

The trial court scheduled a hearing for January 28, 2015. On January 21, Johnson's attorney sent Anthony's attorney an e-mail stating Johnson terminated her representation and threatened to kill Anthony:

> As of 7:30a.m. [sic] yesterday Awan Johnson terminated me, hung up the telephone and removed all authority I have to act on his behalf. He further will not answer the phone.
>
> FURTHER AND PLEASE BE ADVISED, I called you several times today to warn you on behalf of your client that a conditional threat to kill was made by my former disgruntled client indicating that if he "gets screwed" which he may interpret as any restrictions on his custodial rights, he is going to "Kill Andrea [Anthony]". He repeated this and variations, perhaps in anger more than once.

CP at 650. Anthony sought and obtained a temporary domestic violence order of protection the same day. The trial court consolidated the hearing on this order with Anthony's other motions for temporary orders and to modify the parenting plan.

On February 10, 2015, the court heard argument on Anthony's motions. The court found adequate cause to proceed to trial and issued temporary orders allowing Johnson the same residential time provided in the parenting plan conditioned on no contact by G.R. with T.J. and I.J. The court also issued a one-year domestic violence

protection order preventing Johnson from contacting Anthony until February 2016. Johnson appeals the trial court's domestic violence protection order only.

## ANALYSIS

### Standard of Review

Johnson incorrectly asserts that this case presents a legal question warranting de novo review. It does not. A trial court's decision to grant a protection order is a matter of judicial discretion. "Where the decision or order of the trial court is a matter of discretion, it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." State ex re. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

### Protection Order

Johnson argues the trial court erred when it granted Anthony's motion for a domestic violence protection order because evidence that he made a threat to kill Anthony, on its own, is insufficient to show that "he would likely carry out the threat." Br. of App. at 7. We conclude the trial court did not abuse its discretion when it found that Johnson "represents a credible threat" to Anthony. CP at 413.

The Washington Domestic Violence Prevention Act (DVPA) provides for an action to obtain "an order of protection in cases of domestic violence." RCW 26.50.030. The DVPA defines domestic violence as "[p]hysical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members." RCW 26.50.010(1). A petitioner seeking a domestic violence protection order "shall allege the existence of domestic violence, and shall be

-4-

accompanied by an affidavit made under oath stating the specific facts and circumstances from which relief is sought." RCW 26.50.030(1).

The trial court here primarily relied on the e-mail from Johnson's attorney warning Anthony of Johnson's threat to kill her. The trial court found the threat credible because an attorney's disclosure of confidential communications is extraordinary:

> Nevertheless, it's an extraordinary thing. The one thing that all lawyers get taught in law school and learn in their bar exam, regardless of what state they're in, is the sanctity of the attorney/client relationship and the need to not disclose any confidences or secrets, except in extraordinary circumstances; and the one exception that's recognized in this state and California, I happen to know, is where the client makes a statement threatening harm, then the attorney has the right to disclose that and may even have the duty to disclose that.
> . . .
> So I have to say that it would be really an extraordinary thing for an attorney to claim that their client—falsely claim that their client had threatened to harm the other party. I mean, that's—really would be extraordinary and remarkable.
> And I have to go with—since I don't know her, I have to go with the assumption that she was reporting what she had heard; and for that reason, I'm going to go ahead and enter the protection order.

Report of Proceedings (RP) (Feb. 10, 2015) at 40-41. The trial court properly relied on this evidence when it determined that Johnson "represents a credible threat." CP at 413. See ER 1101(c)(4) (The Rules of Evidence, including hearsay, do not apply in protection order proceedings under RCW 26.50). Accordingly, the trial court reasonably concluded that the threat constitutes domestic violence, defined as "the infliction of fear of imminent physical harm, bodily injury or assault." RCW 26.50.010(1). Granting Anthony's motion for a domestic violence protection order was not an abuse of discretion.

Johnson argues the trial court could not, as a matter of law, find his threat credible absent additional evidence. According to Johnson, "[o]ther than the statement itself, there is no other evidence on the basis of which a court could conclude that he would likely carry it out in the absence of an order." Br. of Appellant at 8. But Johnson cites no authority supporting this proposition. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none."). Essentially, Johnson asks us to reevaluate the evidence considered by the trial court and arrive at the opposite conclusion. But it is the trial court's role to weigh the persuasiveness of the evidence, and we typically will not disturb factual determinations on appeal. See Greene v. Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999) ("We will not substitute our judgment for the trial court's, weigh the evidence, or adjudge witness credibility.")

Further, we note that other evidence in the record supports the trial court's conclusion that Johnson's threat was credible.[1] Anthony included with her petition for an order of protection a declaration containing allegations of past instances of domestic violence:

> The reason I decided to leave Awan [Johnson] is because the verbal arguments started to become physical. On two occasions, each while I was holding a child, he came up and poked his finger hard in the

_____

[1] Johnson argues that other evidence of domestic violence did not factor into the trial court's decision. Indeed, neither the trial court's written order nor its comments during the colloquy reference any evidence other than Johnson's threat to kill Anthony. Regardless, we may affirm the trial court on any basis supported by the record. See Hoflin v. City of Ocean Shores, 121 Wn.2d 113, 134, 847 P.2d 428 (1993) (We will affirm the trial court if it reached the right result, albeit for the wrong reason.)

side of my head. On another occasion when I was holding [T.J.] and he was holding [I.J.], he was yelling very close to my face, and I pushed him back a little. He smacked my arm and said, "You hit me first." The last was when he brought [G.R.] over after swearing at me on the phone with her in the car. He walked in the room while I was putting the kids to bed for a nap and told me not to "fucking look at him." I was typing notes in my phone and [he] said he was going to throw it off the deck and grabbed it. I held on when he grabbed it and, during the process, my finger was cut and bruised. I called 911 and then hung up.

. . . I was afraid the fighting would continue and one of the children would get caught in the middle and hurt. That is why our relationship ended.

There have been many other instances of verbal abuse. [Johnson] has said to me, "Why don't you just go die" in front of the kids . . . If he doesn't agree with something I say, he will call me an "idiot" and tell me to "shut the fuck up." He has told me he hates me in front of [T.J.] and called me a "bitter bitch" in front of the children many times.

CP at 773-74. Anthony's declaration indicates that Johnson became particularly hostile as the legal dispute regarding their children continued. For example, after Anthony disclosed her witness list for the pending trial, Johnson sent her a text message stating, "Fuck you. You are going to hurt yourself. Watch." CP at 776. Anthony stated in her declaration that "I am scared that his hostility toward me has reached a new level and that he may try to make good on his threat." CP at 741. She also recalled that during their relationship Johnson "once told [her] that he visualized chopping off the head of his ex-partner and mother of [G.R.]." CP at 740. Under these circumstances, the trial court could have reasonably concluded that Johnson's threat was credible.

In his reply brief, Johnson argues that the facts here do not reasonably relate to the fear of imminent harm, citing Freeman v. Freeman, 169 Wn.2d 664, 676, 239 P.3d 557 (2010) ("the facts do not suggest Robin's fear of Rob is based on a reasonable threat of imminent harm."). Freeman is distinguishable. First, Freeman involved a

permanent protection order. Freeman, 169 Wn.2d at 670–72. To grant a protection order exceeding one year, the court must make an additional finding, "the respondent is likely to resume acts of domestic violence against the petitioner . . . when the order expires." RCW 26.50.060(2). Here, Anthony was not required to show that Johnson would "likely" resume acts of domestic violence after the order expired because she did not seek an order exceeding one year. Further, the Freeman court concluded the protected party failed to show a reasonable fear of imminent harm because the parties had no contact for ten years and the respondent had never violated the protection order already in place. Freeman, 169 Wn.2d at 675. In contrast, the record here shows repeated conflict and hostility between the parties including Johnson's death threat. The record amply supports the trial court's conclusion that Johnson represented a credible threat. He failed to show that the trial court's decision was "exercised on untenable grounds, or for untenable reasons." Junker, 79 Wn.2d at 26.

Attorney Fees

Anthony seeks attorney fees under the DVPA's attorney fees provision and RAP 18.1. See RCW 26.50.060(1)(g), RAP 18.1. In reply, Johnson does not dispute Anthony's request for fees or the fee affidavit she submitted in support. We therefore grant Anthony's request for attorney fees under RCW 26.50.060(1) and conditioned on her compliance with RAP 18.1. See, e.g., Freeman, 169 Wn.2d at 676 (acknowledging that the DVPA authorizes an award of reasonable attorney fees incurred by a protected party seeking an order of protection).

## CONCLUSION

For the foregoing reasons, we affirm and award Anthony attorney fees subject to compliance under RAP 18.1.

WE CONCUR: