# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| MOLLY BAUGHMAN,<br><br>Respondent,<br><br>v.<br><br>DAVID BAUGHMAN,<br><br>Appellant. | No. 78720-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: April 22, 2019 |

APPELWICK, C.J. — David Baughman appeals a domestic violence protection order issued to his former spouse, Molly Baughman. David[1] argues that the trial court's domestic violence finding is not supported by substantial evidence, and that the court violated his due process rights. He also argues that the court erred in ordering him to attend a WHOA[2] class. We affirm.

## FACTS

David Baughman and Molly Baughman were married in 2004. They have two children together. In July 2016, Molly filed for dissolution, and the two separated.

A few months later, Molly filed a motion for a temporary family law order, in which she alleged that David had engaged in abusive, erratic, and threatening behavior during their marriage. She listed examples of David's behavior in the motion. In September 2017, the trial court dissolved their marriage.

---

[1] We use first names for clarity.
[2] "WHOA" stands for "Why Hold On To Anger."

On March 12, 2018, Molly filed a petition for an order of protection. She alleged that Jordan McClellan, her children's former babysitter and David's recent girlfriend, informed her that David had made death threats against Molly. She stated that this information, along with her preexisting fear of David, made her concerned for her life and prompted her to file the petition. In a written statement attached to the petition, Molly listed examples of what she called David's "erratic, intense, and intentionally cruel behavior." She also attached a written statement by McClellan, and her October 2016 motion for a temporary family law order. The motion described David's alleged abuse during their marriage.

A hearing on the protection order was held on April 19, 2018. The commissioner found by a preponderance of the evidence that Molly was credible and that she sought a protection order for her safety. The commissioner granted Molly an order for protection, effective until April 19, 2019.

David then moved to revise the commissioner's order. At the June 19, 2018 hearing on the motion, the trial court agreed with the commissioner and affirmed the protection order. The court stated,

> I have to consider the question of imminent fear, putting myself in the shoes of the mother as she is fearing the alleged threat. She, at that moment, isn't able to go hire a private investigator and figure out if Ms. McClellan is telling the truth, if she is telling the truth . . . . And as I said, if you didn't think that your ex-husband had a violent bone in his body, you might write off the whole thing. . . . But here, there were a lot of things that point me to at least the social definition of domestic violence going on before the parties reached agreement in the dissolution.
>
> And then you add to that this report of very serious threats and kind of an angry obsession about the mother, and I believe I agree

2

with Commissioner [Bonnie] Canada-Thurston, that that creates in her a threat of imminent violence. It's very scary.

The court also ordered David to participate in a WHOA class.

David appeals.[3]

## DISCUSSION

David makes three arguments. First, he argues that the trial court's domestic violence finding is not supported by substantial evidence. Second, he argues that the court violated his due process rights. Third, he argues that the trial court erred in ordering him to attend the WHOA class.

### I. Substantial Evidence

David argues that the trial court's domestic violence finding is not supported by substantial evidence.[4] He asserts that the court erred in relying primarily on a domestic violence allegation Molly made two years prior in the parties' confirmation of issues and certificate regarding mediation (confirmation of issues). He also asserts that McClellan's statements were proven to be false and the other allegations did not meet the definition of domestic violence.

---

[3] David assigns error to both the commissioner's and judge's rulings. "When the trial court reviews a commissioner's ruling, it reviews both the commissioner's findings of fact and conclusions of law de novo based upon the evidence and issues presented to the commissioner." In re Marriage of Fairchild, 148 Wn. App. 828, 831, 207 P.3d 449 (2009). Once the trial court makes a decision, the appeal is from the trial court's, not the commissioner's, decision. Id. Accordingly, we review the trial court's decision.

[4] He also argues that substantial evidence does not support the court's finding that he represented a "credible threat." A petition for a protection order must allege the existence of domestic violence. RCW 26.50.010(3),.030(1). A petitioner is not required to specifically allege the existence of a "credible threat." Accordingly, we construe David's credible threat argument as part of his argument that the court's domestic violence finding is not supported by substantial evidence.

3

This court reviews a trial court's decision to grant a protection order for an abuse of discretion. In re Parentage of T.W.J., 193 Wn. App. 1, 6, 367 P.3d 607 (2016). We will not disturb such a decision on appeal, unless the court's discretion was manifestly unreasonable, exercised on untenable grounds, or for untenable reasons. Id. Where the trial court has weighed the evidence, this court's role is to determine whether substantial evidence supports the findings of fact and whether the findings in turn support the conclusions of law. In re Marriage of Greene, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the stated premise. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 819, 828 P.2d 549 (1992). We will not substitute our judgment for that of the trial court, weigh the evidence, or determine witness credibility. Greene, 97 Wn. App. at 714.

A victim of domestic violence may petition the court for an order of protection. RCW 26.50.030. The petition must allege the existence of domestic violence. RCW 26.50.030(1). And, it must be supported by an affidavit made under oath that states the specific facts and circumstances supporting relief. Id. Domestic violence is defined in part as "physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members." RCW 26.50.010(3). Here, only the infliction of fear is at issue.

In her petition for a protection order, Molly alleged that, on February 24, 2018, McClellan contacted her with concerns about David. McClellan informed her of several comments David had made about Molly, including, "'Well she could

always die,'" and, "'It could be accidental, like she accidentally falls off a cliff.'" McClellan told her that David would end those comments by stating, "'[T]he kids could learn to love a new mother.'"

Molly attached a written statement by McClellan to the petition. In the statement, McClellan alleged that, on their second date in April 2017, David stated, "'My ex could always die, my children could learn to love another mother.'" She alleged that David made that statement 4 or 5 times during their 10 to 11 month relationship. The last time he said it, she alleged that he went into detail about how Molly could accidentally fall off of a cliff. These comments, along with Molly's preexisting fear of David, prompted Molly to contact police and file the petition for protection.

Molly attached her 2016 motion for a temporary family law order to the petition "for evidence o[f David's] anger, rage, and violence" during their marriage. In the motion, Molly alleged that, around 2011 or 2012, David accused her of having an affair, became enraged, and punched a hole in their hallway wall. She alleged that, during Christmas 2014, an argument between the two escalated to the point where David threw his wine glass across the kitchen, shattering the glass. He then picked up their kitchen chair and threw it against the ground, breaking the legs off of the chair. And, she alleged that, in spring 2016, David became upset during an argument and punched a hole in their bedroom wall.

In the motion, Molly listed examples of what she called David's "erratic and threatening behavior" after she told him she wanted a separation. She alleged that, on one occasion, after arriving home from a night out drinking, he became

5

angry with her, started "pacing the room," and "verbally assault[ed] and degrad[ed]" her. He ripped his shirt off, threw it on the ground in front of her, clenched his fists, and walked in and out of their bedroom slamming the door. She alleged that this behavior continued until she told him she would call the police. She alleged that, on other occasions, David texted her that he hated her, texted her that he missed her, and called her over 20 times in the middle of the night. And, she noticed that he had punched holes in a cabinet in their garage.

In her petition, Molly listed more recent examples of David's behavior. She alleged that, in September 2016, he physically blocked her in the garage when she was trying to bring boxes into the house to pack up their children's rooms. He told her that she had an attitude, and that she was not "going to do this today." She alleged that he ignores her in public, and, over e-mail, would alternate between being "cruel and difficult" and asking her on a date. Since February 2018, his e-mails have become "more demeaning."

David argues that the trial court erred in basing its domestic violence determination on the parties' confirmation of issues. That document, dated November 18, 2016, states that both parties alleged domestic violence in their dissolution case. The record does not suggest that the trial court based its determination on the confirmation of issues. In fact, the trial court did not refer to the document in stating its ruling.

David also argues that the trial court relied on McClellan's testimony, which was "shown to not be credible." He asserts that once McClellan was shown to not be credible, "there was no legal justification to award a protection order." He states

that Molly's "own fears, especially in light of the discrediting of the witness, do not justify a protection order" against him.

The trial court did not make a finding on McClellan's credibility. This court does not make credibility determinations on appeal. Greene, 97 Wn. App. at 714. And, Molly's fears can justify a protection order. Domestic violence is defined in part as "physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members." RCW 26.50.010(3) (emphasis added).

We have previously held that a history of abuse and the trial court's belief that the petitioner feared future abuse were sufficient to persuade a rational person that the petitioner had been placed in fear of imminent physical harm. Spence v. Kaminski, 103 Wn. App. 325, 333, 12 P.3d 1030 (2000). Here, the court found that David's past behavior met "at least the social definition of domestic violence going on before the parties reached agreement in the dissolution." Coupled with David's statements to McClellan about Molly accidentally dying, and his "angry obsession about the mother," which were communicated to Molly by McClellan, the trial court found that this "create[d] in her a threat of imminent violence."

The trial court did not abuse its discretion in granting Molly a protection order.

II. Due Process

David next alleges multiple due process violations. He argues that the trial court presumed that Molly's allegations were "factual." He argues that the court's opening remarks were biased towards him. In sum, he asserts that the court "erred

7

by having a bias that swayed an inaccurate presumption of [his] innocence without affording him due process" and "failed to correctly identify which, if any[,] of the allegations[] constituted domestic violence."

Due process fundamentally requires the opportunity to be heard at a meaningful time and in a meaningful manner. Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976). The concept of due process is flexible, requiring procedural protections tailored to the particular situation. Id. at 334.

David argues that the trial court presumed Molly's allegations were factual. He controverted Molly's evidence. He states that, both during and after their marriage, he never threatened Molly "physically, verbally, or through gestures or actions[,] or act in a manner that would constitute behavior noted in RCW 26.50.010." As support, he cites Molly's failure to request a protection order when she filed her motion for a temporary family law order, and her failure to claim any issues when they entered into a final parenting plan. But, he does not point to anywhere in the record where the trial court made such a presumption.

As the trier of fact, the trial court weighs the evidence and determines witness credibility. See In re Marriage of Wilson, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). The trial court did not make a finding that either party was not credible. Absent such findings, the court weighs the evidence presented to reach its conclusion. The trial court's ultimate conclusion that Molly had been placed in fear of harm is not evidence that the court drew an impermissible presumption that Molly's allegations were factual.

David also argues that the court failed to "correctly identify which" of Molly's allegations "constituted domestic violence." As established above, the trial court's domestic violence finding is supported by substantial evidence.

The State Supreme Court has held that the procedures outlined in the Domestic Violence Prevention Act, chapter 26.50 RCW, protect the due process requirements of being heard at a meaningful time and in a meaningful manner. Gourley v. Gourley, 158 Wn.2d 460, 468, 145 P.3d 1185 (2006). David does not argue that the trial court failed to follow these procedures. In contrast, David states in his brief that he was able to address Molly's "allegations both verbally and in written form in both hearings[,] stating that they did not constitute domestic violence."

The trial court did not violate David's due process rights in granting Molly a protection order.

### III. WHOA Class

David argues last that the trial court erred in ordering him to participate in a WHOA class. He asserts that the court "should not have awarded additional punishment above what was awarded by" the commissioner. Specifically, he asserts that the court was not permitted to make such a ruling "during an appeal hearing."

After the trial court affirmed the protection order, it stated,

> I also am going to order that the father participate in the WHOA! program. It's an excellent program. . . . And it focuses more on your relationship with your children than anything else, so I think that you may find that it's really going to be helpful. And I really say that -- I

really mean I think it's helpful. I don't -- I'm not ordering somebody to do something just for the sake of ordering them to do it.

In reviewing the commissioner's ruling, the trial court reviewed both the commissioner's findings of fact and conclusions of law de novo based on the evidence and issues presented to the commissioner. See In re Marriage of Fairchild, 148 Wn. App. 828, 831, 207 P.3d 449 (2009). David does not cite authority to support the proposition that, on review, the trial court cannot impose an additional requirement on one of the parties. Where a party fails to cite authority to support a proposition, "the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none." DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962). We hold pro se litigants to the same standard as attorneys. Kelsey v. Kelsey, 179 Wn. App. 360, 368, 317 P.3d 1096 (2014). And, RCW 26.50.060(e) authorizes a trial court to order a respondent to participate in a domestic violence perpetrator treatment program approved under RCW 26.50.150. David does not argue that the WHOA class is not an approved program.

The trial court did not err in ordering David to attend the WHOA class.

We affirm.

Appelwick, C.J.

WE CONCUR:

Chun, J.                    Mann, J.

10