IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| AMANDA SARAH BETH MCIVER and JAMIE MCIVER, and the marital community comprised thereof, | ) ) ) ) | No. 31370-1-III |
| Appellants, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| CITY OF SPOKANE, SPOKANE PARKS and RECREATION DEPARTMENT, MIKE AHO and JANE DOE AHO, and the marital community comprised thereof, KIMBRE VEGA and JOHN DOE VEGA, and the marital community comprised thereof; PALADIN ALENT and JANE DOE ALENT, and the marital community comprised thereof, employees of CITY OF SPOKANE, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Respondents. | ) | |

SPERLINE, J.* — Amanda McIver appeals the trial court's CR 12(b)(6) dismissal of her defamation claim against the City of Spokane (the City) and the order of summary

---

* Judge Evan E. Sperline is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

judgment dismissing her remaining claims of negligent training/supervision and whistleblower retaliation. She challenges the trial court's (1) refusal to apply judicial estoppel to bar the City from asserting certain facts disputing her claims, and (2) dismissal of her claims pursuant to CR 12(b)(6) and summary judgment. Finding no error, we affirm.

## FACTS

During the summer of 2008, the City of Spokane hired Amanda McIver as a temporary seasonal worker for its Parks and Recreation Department. She was assigned to the Northeast Community Center (NEYC). On April 23, 2009, Ms. McIver was transporting children from the NEYC in a City-owned van as part of her duties as a recreation leader for the Parks Department. While transporting the children, the van she was driving was struck from behind by another City-owned van. Several young children in Ms. McIver's van were not in the required booster seats. The Spokane police department issued Ms. McIver a traffic citation for her failure to use booster seats. The City dismissed the citation on June 10, 2009.

Shortly after the collision, the *Spokesman-Review* published an article about the collision and quoted the NEYC director, Kimbre Vega, as stating, "'I don't know why [the children] weren't in their booster seats.'" Clerk's Papers (CP) at 93. The article

identified Ms. McIver as a driver of one of the vans, but other than stating that she passed a postaccident drug test, made no other reference to her. Ms. Vega did not mention Ms. McIver in the article.

Ms. McIver remained employed with the City until September 16, 2011, when her position was eliminated due to a seasonal reduction in force.

On June 13, 2011, Ms. McIver filed this action against the City. The complaint alleged causes of action for slander and libel, negligent training and supervision, and civil rights violations under Washington's law against discrimination (WLAD), chapter 42.40 RCW and chapter 49.60 RCW.

In her complaint, Ms. McIver alleged that the City failed to provide child safety seats or booster seats and failed to train employees in the use of such safety equipment. Ms. McIver also alleged that City employees, knowing booster seats were not available, then misrepresented to local news media that they were uncertain why Ms. McIver had not used booster seats. Ms. McIver claimed that as a result of these "misrepresentations," she was subject to public ridicule and humiliation. CP at 6. As to her WLAD claim, Ms. McIver maintained that after the collision, she was asked to misrepresent to police that the booster seats were available but not used. She claimed that after she refused to lie to public officials investigating the accident, she was removed from her position and

3

suffered financial loss due to her refusal to lie. She also claimed that as a result of her disclosure that seats were not provided, she was transferred from her position with the NEYC.

Ms. McIver asked for damages for lost wages, pain and suffering, reimbursement for mental and physical treatments, loss of enjoyment of life, and payment for lost earning capacity due to loss of employment. The City moved for judgment on the pleadings under CR 12(b)(6), arguing Ms. McIver's complaint failed to state a claim upon which relief can be granted.

The court granted the City's CR 12(b)(6) motion to dismiss as to Ms. McIver's slander and libel claims, but denied the motion on the remaining claims, finding the evidence "thin," but sufficient to survive a motion to dismiss on the pleadings. Report of Proceedings (RP) (Aug. 10, 2012) at 33; CP at 130-31. In its oral ruling, the court explained that the *Spokesman-Review* quote did not concern Ms. McIver, noting Ms. Vega's statement "could have been reference to any number of breaches of the duty of any number of individuals." RP (Aug. 10, 2012) at 32.

The City then filed a motion to dismiss the remaining claims under CR 56. It attached affidavits from City employees indicating that the City had provided booster seats and trained its employees, including Ms. McIver, in the use of the seats. The City

4

argued that Ms. McIver's decision not to use the booster seats was her own choice, stating "[t]he boosters were available and all drivers were expected to use them." CP at 212. The City also argued that even if the City could be found negligent, the negligence did not harm Ms. McIver as she was kept on the payroll and given two raises over the course of the next two years after the accident.

The trial court granted the City's summary judgment motion to dismiss the negligent training and whistleblower claims.

Ms. McIver appeals the CR 12(b)(6) dismissal of her defamation claim and the summary judgment dismissal of her remaining claims.

ANALYSIS

*Judicial Estoppel*

Ms. McIver first contends that under the doctrine of judicial estoppel, the trial court should not have allowed the City to advance inconsistent positions regarding the availability of booster seats. She claims that the City dismissed the infraction against her based on the fact that it purchased booster seats after the collision, but then reversed its position in the instant case and claimed the seats were available at the time of the collision. She maintains, "the City's position that booster seats were not previously available but subsequently purchased was the sole legal and factual predicate for the

5

dismissal." Reply Br. at 1. She further claims that this presents "a genuine factual dispute that precludes dismissal, or the City has misled one of the two courts." Reply Br. at 2.

The equitable doctrine of judicial estoppel prevents a party from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position in another court proceeding. *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 538, 160 P.3d 13 (2007) (quoting *Bartley-Williams v. Kendall*, 134 Wn. App. 95, 98, 138 P.3d 1103 (2006)). The court focuses on three core factors when deciding whether to apply the doctrine of judicial estoppel: (1) whether a party's current position is inconsistent with an earlier position, (2) whether judicial acceptance of an inconsistent position in the later proceeding will create the perception that the party misled either the first or second court, and (3) whether the party asserting the inconsistent position will obtain an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Miller v. Campbell*, 164 Wn.2d 529, 539, 192 P.3d 352 (2008) (quoting *Arkison*, 160 Wn.2d at 538-39).

We review the trial court's application of judicial estoppel for an abuse of discretion. *Miller*, 164 Wn.2d at 536. Where a decision of the trial court is a matter of discretion, it will not be disturbed except on a clear showing that the decision was

6

manifestly unreasonable and exercised on untenable grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

During the City's motion for summary judgment, Ms. McIver argued that the City should be judicially estopped from being able to argue that booster seats were available on the date of the collision because the City had dismissed Ms. McIver's citation based on its previous assertion that it did not have booster seats on the date of the collision, but had corrected the problem by purchasing booster seats later.

The City responded that its positions were not inconsistent. The City explained that booster seats had always been available, but that the City upgraded the booster seats to high-backed seats after the collision, mistakenly believing the existing seats were inadequate. The City emphasized that although it had dismissed Ms. McIver's citation based on its subsequent purchase of better quality booster seats, booster seats had been available on the day of the collision. According to the City:

> A citation like this normally gets dismissed if somebody goes out and shows they corrected the problem, because the point of this law is to keep kids safe, to make sure that people comply with the booster law.
> So that's exactly what happened. They presented their receipts. Okay. Northeast Youth Center is in compliance. Boom. Citations dismissed. There's nothing sinister about that, and it is not an admission against interest or anything.

RP (Nov. 30, 2012) at 28.

7

The court denied Ms. McIver's judicial estoppel argument, stating, "I am satisfied that that was based on the backed seats versus the backless. So it didn't matter what they did after the fact on the higher-backed seats. I'm focusing on what they had in their inventory on the backless. I'm accepting the City's position that that satisfied the rule." RP (Nov. 30, 2012) at 33.

In view of this record, Ms. McIver fails to establish the first factor—that a later position would be clearly inconsistent with an earlier position. Nothing in the record before us indicates that the City previously asserted that booster seats were not available on the day of the collision. As just detailed, the City was clear that booster seats had always been available, it simply upgraded them after the collision, mistakenly believing the old seats were out of compliance with the new law. The court was well within its broad discretion in rejecting Ms. McIver's judicial estoppel argument.

The trial court did not abuse its discretion in refusing to apply the doctrine of judicial estoppel to preclude the City from asserting that booster seats were available on the day of the collision.

Next, Ms. McIver contends that the trial court incorrectly applied CR 12(b)(6) and summary judgment standards in dismissing her claims.

## CR 12(b)(6) Dismissal of Defamation Claim

Next, Ms. McIver contends that the trial court incorrectly applied CR 12(b)(6) and summary judgment standards in dismissing her claims. Whether dismissal is appropriate for failure to state a claim under CR 12(b)(6) is a question of law that an appellate court reviews de novo. *San Juan County v. No New Gas Tax*, 160 Wn.2d 141, 164, 157 P.3d 831 (2007). The factual inquiry on a CR 12(b)(6) motion presumes the allegations set forth in the complaint to be true and asks whether any set of facts can be conceived that would support a valid claim. *Halvorson v. Dahl*, 89 Wn.2d 673, 674-75, 574 P.2d 1190 (1978).

To establish a prima facie claim for defamation, Ms. McIver was required to demonstrate that (1) the City's statements about her were false, (2) the statements were unprivileged, (3) the City was at fault, and (4) that the statements proximately caused damage. *Wood v. Battle Ground Sch. Dist.*, 107 Wn. App. 550, 567-68, 27 P.3d 1208 (2001). A CR 12(b)(6) motion to dismiss is appropriate in defamation cases where a plaintiff's complaint fails to demonstrate the existence of one of the elements of defamation. *Clapp v. Olympic View Publ'g Co.*, 137 Wn. App. 470, 475, 154 P.3d 230 (2007).

Ms. McIver does not address the elements of defamation or otherwise explain how the City's statements are defamatory. Furthermore, she fails to specify the objectionable statements. She makes a general assertion that City employees told police they were "uncertain" why booster seats were unavailable, but fails to cite the record in support of this claim. Later, she simply contends, "Ms. Amanda McIver was given a traffic infraction . . . and wrongfully subjected to public ridicule, humiliation, and community ridicule because of false statements of Spokane City Parks and Recreation employees." Br. of Appellant at 8.

A review of the record suggests that Ms. McIver's defamation claim is based on Ms. Vega's statement in the *Spokesman-Review*, quoted above—"'I don't know why [the children] weren't in their booster seats.'" CP at 93. However, Ms. McIver first fails to establish that Ms. Vega's statement was about her or was false. A statement must be considered as a whole to determine whether it is true or false. *Clardy v. Cowles Publ'g Co.*, 81 Wn. App. 53, 65, 912 P.2d 1078 (1996). Ms. McIver did not produce any evidence indicating that Ms. Vega had any firsthand knowledge as to why Ms. McIver did not use booster seats. Ms. Vega was merely reciting her state of mind to a reporter, stating that she was not sure why booster seats were not used. Furthermore, Ms. McIver failed to show that Ms. Vega's statement was about her. As the trial court pointed out,

Ms. Vega's statement could have been referencing any number of breaches by any number of individuals involved in providing booster seats. Nothing in the statement or article individually targets Ms. McIver. The trial court properly dismissed Ms. McIver's defamation claim pursuant to CR 12(b)(6).

### *Summary Judgment Dismissal of Negligent Training and "Whistleblower" Claims*

We next turn to the remaining claims that were dismissed under CR 56. As to the negligent supervision/training claim, Ms. McIver reiterates her judicial estoppel argument, recites the summary judgment standard, and then provides the following single sentence of argument: "Further, in looking at the many affidavits provided in this matter, there was a material question of fact about the City of Spokane failing to provide proper equipment and training." Appellant's Br. at 12. As to her whistleblower claims, she simply argues, "Additionally, the plaintiff presented adequate evidence as to her other claims to avoid summary judgment." Appellant's Br. at 12. Our analysis of Ms. McIver's argument is compromised by her failure to address the elements of her claims or point to specific evidence in the record to support them. Nevertheless, our review of the record reveals that summary judgment dismissal was proper.

We review a summary judgment order de novo, performing the same inquiry as the trial court, and considering the facts submitted and all reasonable inferences in the light

most favorable to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). A moving party may satisfy the initial burden by showing that there is an absence of evidence to support any material issue in the nonmoving party's case. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225 n.1, 770 P.2d 182 (1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

In response, the nonmoving party may not rely on the allegations in the pleadings, but must set forth specific facts by affidavit or otherwise that show a genuine issue exists. *Las v. Yellow Front Stores, Inc.*, 66 Wn. App. 196, 198, 831 P.2d 744 (1992). Summary judgment is proper if there is no genuine issue as to any material fact and the nonmoving party is entitled to judgment as a matter of law. *Kruse v. Hemp*, 121 Wn.2d 715, 722, 853 P.2d 1373 (1993); CR 56(c).

To establish her negligence claim, Ms. McIver was required to show duty, breach, causation, and damage. *Gurno v. Town of LaConner*, 65 Wn. App. 218, 228-29, 828 P.2d 49 (1992); *Hartley v. State*, 103 Wn.2d 768, 777, 698 P.2d 77 (1985). Ms. McIver's claim fails at the outset because she presents no evidence or argument as to the standard of care owed by the City to City employees or even, at a minimum, whether such a duty exists.

A negligent supervision claim is a claim for a third party to sue an employer for the actions of its employee. *Rodriguez v. Perez*, 99 Wn. App. 439, 451, 994 P.2d 874 (2000). The *Rodriguez* court stated, "Negligent supervision creates a limited duty to control an employee for the protection of a third person." *Id.*; *see also Haubry v. Snow*, 106 Wn. App. 666, 679, 31 P.3d 1186 (2001) (reiterating the theory of liability in a negligent supervision case is that the employer's negligence is a wrong to the third person). Ms. McIver presents no authority for her argument that she is permitted to bring a negligent supervision claim against her employer for her own personal injury.

However, even if Ms. McIver can somehow establish that she is allowed to present such a claim, she fails to establish negligent training. Contrary to her general assertion that the City did not provide training, the evidence amply reflects that the City had established policies and procedures regarding the use of booster seats and training of van drivers. Paladin Alent, the Operations Manager for the NEYC and a trainer for the City's van drivers, submitted an affidavit in which she detailed the training she provided to Ms. McIver and other drivers:

> 7.    . . . At the NEYC, we were aware that the Washington law changed regarding the use of booster seats for younger children sometime in 2003 (and then again twice in the next few years). Based upon that change in the law, we trained all personnel who would be driving the younger children in the proper use of a booster seat. This occurred during our regular van driver training sessions or state-mandated employee

13

orientations.

. . . .

9.   I also know that the NEYC had a large supply of backless booster seats which were, I believe, donated to us in a new condition.

10.   On 5/29/08, I personally trained Amanda McIver regarding van driving.

. . . .

13.   No employee at the NEYC would have even been allowed to work with the children without receiving the state-mandated training. Amanda McIver would have been trained along with 30-50 other new employees when she started work in 2008.

14.   Every driver of [an] NEYC van was required to have a driver's license and to adhere to the state law regarding child restraints (aka booster seats). If we had received any notice that a driver was not using boosters, that employee would have been disciplined.

15.   By 2008, normally the booster seats were kept in the vans. . . . It was the responsibility of every driver to determine if he/she needed boosters for any particular route they were driving.

CP at 147-49.

Ms. Vega also submitted an affidavit in which she stated that booster seat training was based on state law. She stated that in order to implement state booster seat laws, she established procedures and practices for the NEYC drivers. According to Ms. Vega if a child was less than 4 feet 9 inches, the driver was responsible to ensure that the child was in a booster seat. She stated, "Starting in 2005, if a child was under 4'9", they were to be placed into a booster seat regardless of their age." CP at 161. She also stated that she never received any complaint from Ms. McIver regarding the lack of booster seats: "I do not understand why Ms. McIver is stating that there were no booster seats. . . . If [Ms.]

14

McIver had made ANY complaint to me or my staff regarding any safety issue, I would have immediately investigated and gotten to the bottom of the issue." CP at 162.

The City also attached a training checklist entitled, "Child's Safety During Transitions." CP at 166. The checklist provided that "You must adhere to State Guidelines regarding Booster Seat Regulations. (see back)." CP at 166. A document entitled "Booster Seat Procedures (revised 3/22/04)" lays out the change in state law regarding booster seats and instructs the drivers they must weigh and measure the children to determine if they need a booster seat. CP at 167.

Ms. McIver provides nothing to refute the City's evidence but her own statements. The party opposing summary judgment "may not rely merely upon allegations or self-serving statements, but must set forth specific facts showing that genuine issues of material fact exist." *Newton Ins. Agency & Brokerage, Inc. v. Caledonian Ins. Group, Inc.*, 114 Wn. App. 151, 157, 52 P.3d 30 (2002). As such, Ms. McIver fails to raise a genuine issue of material fact as to whether the City violated any standard of care.

Ms. McIver likewise fails to establish material issues of fact regarding her "whistleblower" claim under chapter 42.40 RCW and chapter 49.60 RCW of the WLAD. RCW 49.60.210(1) provides that it is unlawful for a government agency to discriminate against any person because he or she has opposed any practices forbidden by chapter

15

49.60 RCW. It also provides that it is an unfair practice for a government agency, manager, or supervisor to retaliate against a whistleblower as defined in chapter 42.40 RCW. RCW 49.60.210(2); *see also* RCW 42.40.050(1) (whistleblower who has been subjected to workplace reprisal or retaliatory action is presumed to have established a cause of action for the remedies provided under chapter 49.60 RCW).

To establish a prima facie case of whistleblower retaliation or discrimination, an employee must show that (1) she engaged in a statutorily protected activity, (2) her employer took an adverse employment action, and (3) the employee's activity caused the employer's adverse action. *Milligan v. Thompson*, 110 Wn. App. 628, 638, 42 P.3d 418 (2002). Once the employee establishes a prima facie case, the burden shifts to the employer to produce evidence of a legitimate, nonretaliatory reason for the employment action. *Estevez v. Faculty Club of Univ. of Wash.*, 129 Wn. App. 774, 797-98, 120 P.3d 579 (2005).

Ms. McIver's claim fails at the outset because she fails to establish that she is a "whistleblower" as defined by the statute. The term "whistleblower" means:

> An employee who in good faith provides information to the auditor or other public official . . . in connection with an investigation under RCW 42.40.040 and an employee who is believed to have reported asserted improper governmental action to the auditor or other public official . . . but who, in fact, has not reported such action or provided such information.

No. 31370-1-III
*McIver v. City of Spokane*

RCW 42.40.020(10)(b)(i).

Ms. McIver's whistleblower complaint consists of allegations that she complained of a lack of child booster seats to her supervisor, Ms. Vega. However, Ms. McIver presents no evidence of a complaint to the auditor or other public official in connection with an investigation. Additionally, Ms. McIver presents no evidence of retaliation or adverse employment action by the City. To the contrary, the declaration of Becky Davis establishes that the City kept Ms. McIver on the payroll after the collision and gave her two pay raises until budget issues required a seasonal reduction in force. The trial court properly ordered summary judgment dismissal of Ms. McIver's WLAD claim.

The trial court properly ordered summary judgment dismissal of Ms. McIver's negligent supervision and WLAD claims.

Affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Sperline, J.P.T.

WE CONCUR:

_____
Brown, A.C.J.

_____
Korsmo, J.

17